F. L. STOTTS and Shirley Stotts *v.* Jimmy JOHNSON
and the Malvern National Bank

90-105                                           791 S.W.2d 351

Supreme Court of Arkansas
Opinion delivered June 11, 1990

*David B. Switzer*, for appellants.

*Phillis J. Lemons*, for appellee Jimmy Johnson.

*Glover, Glover & Roberts*, for appellee Malvern National
Bank.

STEELE HAYS, Justice. This case involves a priority dispute
under the Uniform Commercial Code between two creditors,
F.L. and Shirley Stotts, appellants, and Malvern National Bank,
appellee. The Stotts and the Bank claimed an interest in property
being purchased by the debtor, Jimmy Johnson. The trial court
found in favor of the Bank and the Stotts appeal from that
decision.

On August 4, 1986, Jimmy Johnson made an agreement
with F.L. Stotts to purchase a concession trailer from Stotts.
Stotts gave Johnson a bill of sale which described the homemade
concession trailer and included a statement that the trailer was
free from all liens and encumbrances. Johnson took the bill of sale
on the same day to the Malvern National Bank where he obtained
a loan of $14,347.60. The Bank took a security interest in the

trailer and filed its financing statement, perfecting its interest.

A month later Johnson gave Stotts a $10,000 down payment and signed a contract of sale, a promissory note, financing statement and security agreement. The financing statement was never perfected. By the terms of the contract, Johnson was to pay the down payment and $500 per month to Stotts.

In January of 1988, Johnson defaulted and Stotts repossessed the trailer pursuant to a provision in the contract of sale. Stotts then sold the trailer without giving notice to either Johnson or the Bank.

When Johnson learned of the sale he filed a replevin suit naming Stotts and the Bank as defendants and claiming Stotts had wrongfully repossessed the trailer. The Bank filed a counter claim against Johnson and a cross-claim against the Stotts alleging its lien was superior to that of Stotts. The case was heard by the trial court and it found for the Bank, holding that the Bank's interest was paramount. The Bank was awarded judgment for the past due principal and interest, $8,920.07, against Stotts and Johnson.[1] Other cross-claims and counterclaims by Stotts and Johnson were dismissed because of insufficient evidence.

The only issue on appeal is the Stotts's contention that the trial court erred in awarding judgment in favor of the Bank. We affirm the trial court.

Appellants' argument rests on two provisions of the Arkansas Uniform Commercial Code. The first, Ark. Code Ann. § 4-9-504 (1987), provides for the disposition of collateral by a secured party after a debtor's default. The pertinent provision provides for notification of a sale of the collateral:

> § 4-9-504(3).
> . . ."[R]easonable notification of the time and place of any . . . sale . . . shall be sent by the secured party to the

---

[1] This may not be the appropriate measure of damages, see R. Hillman, J. McDonnell, S. Nickles, Common Law and Equity Under the Uniform Commercial Code, (1985), § 25.01[3][a] and § 25.02[5][a], n.312, however this issue was not raised below nor has it been argued on appeal.

debtor. . . . In other cases, notification shall be sent to any other secured party from whom the secured party has received . . . written notice of a claim of an interest in the collateral.

The second provision relied on is Ark. Code Ann. § 4-9-507 (1987), which deals with a secured party's liability for failure to comply with Section Five of Article 9. It provides in part:

§ 4-9-507(1).
If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part.

Appellants argue that under these two provisions of the Code there is no requirement that notice be sent to someone in the Bank's position, i.e., the Bank was not the debtor, nor had it notified appellants of its interest, § 4-9-504(3). Nor was the Bank within one of the classifications of § 4-9-507(1) of parties entitled to recover because of failure to comply with the provisions of part Five of Article 9. Therefore, appellants argue, the Bank was not entitled to any proceeds out of the disposition of the collateral upon default.

While there is authority supporting appellants' position that they were not required to send notice to a senior creditor under § 4-9-504(3), see e.g., B. Clark, *The Law of Secured Transactions*, § 4.8[7][d] (1980), that does not answer the question before us. Nor do we find it dispositive whether the Bank was within one of the classifications entitled to recover under § 4-9-507(1) from a loss caused by a secured party's failure to comply with the provisions of Part Five of Article 9, as also argued by appellants.

While the provisions in Part Five of Article 9 arguably do not include a senior creditor in the Bank's position, they are not dispositive in any case, because they are not relevant to a senior creditor's claim of *priority* in the collateral or its proceeds.

Rather, we interpret the provisions in Part Five as directed to those individuals who would have an interest in seeing that the collateral is disposed of in the most productive manner possible, so that a surplus might be realized, which is all a debtor and junior creditor would be entitled to. *See* §§ 4-9-504(1)(c), and 4-9-504(2); 9 W. Hawkland, *Uniform Commercial Code Series*, § 9-504:09 (1986); Ark. Code Ann. § 4-9-504 Comment 6 (1982); *see also*, R. Hillman, J. McDonnell, S. Nickles, *Common Law and Equity Under the Uniform Commercial Code* § 25.02[4][a] (1985).

In contrast, a senior creditor is interested, not in any surplus from a junior creditor's sale, after deduction of the junior's interest, but in realizing its priority entitlement as predetermined by the Code. Support for the Bank's position is found in §§ 4-9-301 and 4-9-312, which provide that a perfected interest, as held by the Bank, takes priority over an unperfected security interest, held by Stotts. *See* § 4-9-301, Comment 2. Were it otherwise, what would be the point of granting priority to the party who has followed the structure outlined in the Code to determine priority disputes? *See* B. Clark, § 3.9[d], *The World's Worst UCC Decision* (where the author criticizes a Florida case in which the court ignored the clear priority provisions of the Code, and fashioned an award to a junior creditor based on certain equity maxims).

While it has been acknowledged that Article 9 would grant priority to a senior creditor over a junior creditor, it is further acknowledged that, "[N]othing in Article 9 clearly and explicitly gives a senior secured party a prior right to the proceeds of a foreclosure sale conducted by a junior secured party. . . ." R. Hillman, *supra*, at note 265. However, that same commentator further notes that the priority interests are clearly recognized by the Code, *id* at note 265, 293, and that while this issue of a senior creditor's priority to the proceeds has not been squarely addressed in most cases, a number of courts have nevertheless held that a junior secured party who disposes of collateral is accountable to a senior secured party for the sale proceeds. *Id.* at note 280, and *id*, 1989 Cum. Supp., note 280, (and cases cited therein); *see also* B. Clark, *supra*, § 4.6[4], 1987 Cum. Supp. No. 3 (and cases cited therein). These courts have found support for their decisions through various theories including a conversion

action by the senior creditor, based on priority sections of the code, *see e.g., Erland Imp.* v. *First St. Bank of Brownsdale*, 400 N.W.2d 421 (1987) (§ 9-312); *Consolidated Equip. Sales, Inc.* v. *First State Bank & Trust Company of Guthrie*, 627 P.2d 432 (Okla. 1981) (§ 9-306, *and see* R. Hillman, *supra* at § 25.02[4][b], or simply on the basis of the senior creditor's request for accounting pursuant to the priorities of the Code, *see State Savings Bank of Hornick* v. *Onawa State Bank of Onawa*, 368 N.W.2d 161 (Iowa 1985); *N.H. Business Dev.* v. *F.R. Lepage Bakery*, 832 F.2d 7 (1st Cir. 1987) (the court based its decision on priority interests and a constructive trust theory in response to the plaintiff's request for an accounting.)

Our research has produced little discussion of this question, but the one extensive commentary we have found gives support for granting priority in this situation to the senior creditor, based on the priority provisions of the Code, R. Hillman, *supra*, at note 293, with support from various policy reasons within the code's framework. *Id.* at § 28.02[4][d]. We find that persuasive. That discussion concludes with the following:

> These concerns may suggest that an unexpressed principle or policy underlies Article 9 which supports giving a senior secured party a prior right to the proceeds of a junior creditor's disposition of collateral. If so, the courts are licensed to go beyond the statute's literal dictates and construe its provisions liberally. (fn omitted). Specifically, the courts may implement 'a statutory policy with liberal and useful remedies not provided in the statutory test.' (fn

omitted). Thus the plain meaning and logical implications of Sections such as 9-306 and 9-504 may be preempted by a pervasive spirit of priority that supports giving a senior secured party a claim to the proceeds of a junior creditor's sale of collateral.

To the same effect see *N.H. Business Dev.* v. *F.R. Lepage Bakery, supra.* We agree with that analysis and hold that the trial court properly found that the Bank had priority over the Stotts.

■ As an alternate point, appellants argue that they could not be liable to the Bank because at the time of the disposition of the collateral the debtor was not yet in default to the Bank. This issue was not raised to the trial court, consequently the point has not been preserved for review. *Barr* v. *Arkansas Blue Shield, Inc.*, 297 Ark. 262, 761 S.W.2d 174 (1988).

■ Appellants also argue that the cross-complaint filed by the Bank should be dismissed because the appellants were not served with the complaint within the time limit prescribed by ARCP Rule 4(i). However, this issue, while mentioned by appellants in their answer, was not otherwise brought to the attention of the trial court. Having failed to obtain a ruling by the trial court, the appellants may not raise the point on appeal. *Britton* v. *Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987).

The judgment is affirmed.