Antonio Demarion COLEY *v.* STATE of Arkansas

CR 90-83                                          801 S.W.2d 647

Supreme Court of Arkansas
Opinion delivered January 14, 1991

*Rice, Pierce and Ogles Law Firm*, by: *John Ogles*, for appellant.

*Ron Fields*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Associate Justice. Antonio Demarion Coley appeals from his conviction of aggravated robbery and forgery for which he was sentenced as an habitual criminal to life imprisonment plus 30 years. His sole argument is that the evidence was insufficient. We find the evidence was sufficient, and we have determined, in accordance with our Rule 11(f), that the court made no error prejudicial to the defendant. The conviction is affirmed.

Marie Robinson identified Coley as the man who, on January 12, 1989, appeared at the Jackpot Store where she worked and attempted to cash a check. He wrote the check in her presence, making it payable to "Jack Pot" for $20. He then tore the check out of a checkbook and turned it over and endorsed it with the name "Tony Johnson" and a phone number. The check, which was introduced as an exhibit, was on the account of Michelle McEwen, and it was signed with that name.

Ms. Robinson testified she explained to Coley she could not cash a check except for the amount of purchase. With that he picked up a carton of soft drinks. She said that was not enough of a purchase. Coley then asked that she call the store manager to approve the check. When she turned away to place the call, she heard the cash register make a noise as if one were trying to open it but had punched the wrong key. She turned to face Coley and told him she could not reach the manager. Coley then asked that she change a dollar. When she opened the register, Coley

attempted to get his hand in it. She slammed the drawer closed and asked what he was doing. She testified Coley then backed away, placed his hand in his pocket, and said, "If you're not going to give me the money, I'm going to have to shoot you." She twice asked Coley what he had said, and he repeated the statement twice. She then screamed at people on the store lot, and Coley picked up the soft drinks and ran.

Robbery is defined by Ark. Code Ann. § 5-12-102(a) (1987) as follows: "A person commits robbery if, with the purpose of committing a theft . . ., he . . . threatens to immediately employ physical force upon another." Aggravated robbery occurs, according to Ark. Code Ann. § 5-12-103(a)(1) (1987), if the person committing robbery "is armed with a deadly weapon or represents by word or conduct that he is so armed . . . ."

Coley cites *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986), for the proposition that the necessary "substantial evidence" of guilt must do more than create a suspicion and must be of sufficient force and character to force the mind beyond conjecture and compel a conclusion one way or the other. The evidence in this case meets that test.

## 1. Aggravated robbery

Coley argues that Ms. Robinson's identification of him in a photo of a physical line-up did not occur until a month after the robbery and that she had described him to the police only as being a black man six feet tall and weighing 180 pounds. No authority is cited in support of his contention that a "belated" identification or such a general description discredits Ms. Robinsons's positive identification of Coley from the line-up photo and at the trial.

He also argues the evidence was insufficient to prove there was a threat of force. Ms. Robinson's testimony included the following:

> A:  . . . I said, "What are you doing?" And he backed off, and he put his hand in his jacket, and he said, "If you're not going to give me the money, I'm going to have to shoot you." And I said, "What?" And he said, "If you don't give me the money, I'm going to have to shoot you." And he told me that— I asked him again. I don't know why I asked him three times. I couldn't believe it. And he told me three

times he was going to shoot me if I didn't give him the money. And I started yelling for the kids out on the parking lot, and he ran out and got in his car. He took the six-pack of Cokes with him, and left.

. . .

Q: Were you scared?

A: Not at first, no, sir. After he left, I was very scared.

Q: Did you ever see a gun?

A: No, sir.

Q: Why did you ask him again?

A: I just couldn't believe he was doing it. I mean, I didn't see a gun, and he just well, if you're not going to give me the money, I'll have to shoot you. And I just— I don't know. I guess I just was nervous or something.

Although he does not cite our cases on the point, Coley's contention appears to be that Ms. Robinson's actions belied any fear on her part that Coley had a gun in his pocket. The statute says nothing about fear in the victim, but we held in *Fairchild* v. *State*, 269 Ark. 273, 600 S.W.2d 16 (1980), that to satisfy the threat of deadly force requirement there must be an appreciation on the part of the victim that the accused was armed. Fairchild acknowledged he had tried to make his victim think he had a gun by placing his hand inside his shirt; however, the evidence was that the victim placed no significance on the hand inside the shirt.

In *Richard* v. *State*, 286 Ark. 410, 691 S.W.2d 872 (1985), we held that the fact that Richard was armed with a cap pistol which was perceived by the victim as a deadly weapon was sufficient to satisfy the statute. We noted in passing that the "gravamen of the crime of robbery is the injury or threat of injury to the victim. The threat of injury was just as real to the victim in this case as it would have been had the gun been capable of inflicting injury."

In *Clemmons* v. *State*, 303 Ark. 354, 796 S.W.2d 583 (1990), we held that where there has been a "verbal representation" of being armed with a deadly weapon the requirement of § 5-12-103(a)(1) is satisfied. Clemmons's victim testified she

assumed "it was his finger in his jacket" although Clemmons had said "I've got a gun. Give me your purse or I'm going to shoot you." We distinguished the *Fairchild* case solely on the basis of Clemmons's statement that he had a gun and would shoot the victim. Although Coley did not say he had a gun, his statement that he would "shoot" Ms. Robinson if she did not give him the money is a verbal representation that he was armed with a deadly weapon.

## 2. Forgery

Forgery is described, in part, by Ark. Code Ann. § 5-37-201(a) (1987) as drawing a written instrument purporting to be the act of a person who did not authorize it. Second degree forgery occurs when a person forges a check "that does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." Ark. Code Ann. § 5-37-201(c)(1) (1987). Coley's argument here is that the evidence showed that a fingerprint analysis was done of the check and it did not show Coley's prints. Michelle McEwen testified that the check was on her account, that her checkbook had been stolen, and that she had not given anyone authority to sign her name to the check.

█ █ The fact that Coley's fingerprints were not found on the check becomes insignificant in the face of the testimony of Ms. Robinson that she observed Coley draw the check. It was the prerogative of the jury to believe or disbelieve Ms. Robinson's testimony. *Williams* v. *State*, 289 Ark. 69, 709 S.W.2d 80 (1986).

> We do not "pass upon the credibility of the witnesses and [have] no right to disregard the testimony of any witness after the jury has given it full credence, at least where, as here, it cannot be said with assurance that it was inherently improbable, physically impossible or so clearly unbelievable that reasonable minds could not differ thereon."

*Robinson* v. *State*, 291 Ark. 212, 723 S.W.2d 818 (1987), quoting *Barnes* v. *State*, 258 Ark. 565, 528 S.W.2d 370 (1975).

Affirmed.