Lois MONTGOMERY and Bill Montgomery *v.* Dr. R. C. BUTLER

91-100                                834 S.W.2d 148

Supreme Court of Arkansas
Opinion delivered June 1, 1992

492

*Bramhall, Duncan, & Ohm*, by: *Phillip H. Duncan*, for appellants.

*Mitchell, Williams, Selig & Tucker*, by: *Coleen M. Barger*, for appellee.

JACK HOLT, JR., Chief Justice. This is an appeal from a jury verdict in favor of the appellee, Dr. R.C. Butler, on a claim of medical malpractice against him by the appellants, Lois and Bill Montgomery.

The underlying facts show that Mrs. Montgomery was referred to Dr. Butler, a gastroenterologist, by her famialy physician, Dr. Howard R. Harris, for tests and treatment of her complaints of recurrent stomach pains, nausea, and diarrhea, including evaluation for possible Crohn's disease. In February 1987 Dr. Butler performed a colonoscopy, in which he found no evidence of Crohn's disease, and instituted treatment for inflammatory bowel disease. In June 1987, Mrs. Montgomery entered Baptist Medical Center where another gastroenterologist referred by Dr. Harris, Dr. Bill Morton, performed tests that revealed the presence of Crohn's disease.

Dr. Morton treated Mrs. Montgomery for six weeks, and she showed temporary signs of improvement. In late July 1987, however, her condition worsened, and she underwent surgery for the removal of a large portion of her small intestine.

The Montgomerys filed suit against Dr. Butler on the basis that he was negligent in not having diagnosed or treated Mrs. Montgomery for her Crohn's disease. After trial, the jury returned a verdict in favor of Dr. Butler, and the Montgomerys now assert four points of error on appeal: 1) the trial court erred in failing to grant a mistrial when Dr. Butler presented inadmissible and prejudicial evidence to the jury, 2) the trial court abused its discretion in allowing certain surgeons to testify as experts on Dr. Butler's behalf concerning the treatment of Crohn's disease by medication as distinguished from treatment by surgery, 3) the trial court erred in allowing and condoning the use of the phrase "guilty of medical malpractice" to be stated as law before the jury, and 4) the trial court erred in unduly limiting their examination of witnesses.

Dr. Butler argues that the Montgomerys' appendix is

defective under Ark. Sup. Ct. R. 9 because they failed to include in their appendix the trial court's final judgment, their motion for judgment notwithstanding the verdict or, in the alternative, for new trial, and their notice of appeal.

Rule (9)(d) at the time the Montgomerys filed their appendix provided in pertinent part:

> (d) Appendix. — Following the argument portion of the appellant's brief, the appellant shall include an appendix, consisting of those portions of the designated record . . . the appellant deems dispositive of or directly relevant to the issue or issues on appeal. . . . The appendix shall include, in the following order:
>
> \*       \*       \*
>
> (ii)   relevant pleadings;
>
> \*       \*       \*
>
> (v)   the verdict or findings of fact, conclusions of law and judgment or decree;
>
> (vi)   relevant post trial motions and orders;
>
> \*       \*       \*
>
> (ix)   the notice of appeal, as well as the petition for review if the case has been decided by the Arkansas Court of Appeals.
>
> Failure to place a copy of a part of the record in the appendix will not preclude the court from referring to it, but the court will not consider itself obligated to go beyond reading the briefs and included or separate appendices to decide a case.

From examination of the Montgomerys' appendix, it is obvious that they have failed to comply with Rule 9(d) by not including any pleadings, the verdict, notice of appeal, or any post-trial motions as required by the rule. The question then arises as to whether we can decide the points of error raised by the Montgomerys in their arguments by reading their briefs. The quick answer is that we find from a reading of the briefs and the appendices that sufficient material parts as are necessary for an

understanding of the questions at issue have been presented to us, and we can and should render our decision on the merits. In doing so, we affirm. *See generally Harrison Civil Serv. Comm'n v. Reid*, 261 Ark. 42, 546 S.W.2d 413 (1977) (case decided under prior Rule 9; the abstract was not so deficient as to call for an affirmance under Rule 9(d)); *Goodloe v. Goodloe*, 253 Ark. 550, 487 S.W.2d 593 (1972) (case decided under prior Rule 9; although not in compliance with Rule 9(d), the abstract was sufficient to determine the issue on appeal).

## I. MISTRIAL

Initially, the Montgomerys contend that the trial court erred in failing to grant a mistrial when Dr. Butler presented inadmissible and prejudicial evidence to the jury. Specifically, the Montgomerys allude to Exhibit 11, which is not contained in the transcript, and to Court Exhibit 2, which is in the transcript but which is not part of their appendix or Dr. Butler's supplemental abstract.

Arkansas Sup. Ct. R. 9(d) provided that the failure to place a copy of a part of the record in the appendix will not preclude the court from referring to it, but the court will not consider itself obligated to go beyond reading the briefs and included or separate appendices to decide a case. In examining the parties' briefs and appendices, we find that the only reference to these materials that the Montgomerys claim is objectionable is their inclusion in their briefs of the following exchange between counsel and the trial judge in an in-chambers hearing:

> MR. OHM:     It was Defendant's Exhibit 11, page 2 containing the reference to insurance at the bottom of the page, your Honor.
>
> THE COURT:     Yes, I see it. I was just trying to figure out what kind of document it is.
>
> MR. BRAMHALL:     This was one of Dr. Butler's records. The only thing of significance on there is the . . . .
>
> THE COURT:     Is the name United Employers' Federation?
>
> MR. BRAMHALL:     Yes, sir. Where it says "Insurance," it is printed, "Insurance," and then "United Em-

ployers' Federation, Post Office Box, Searcy, Arkansas. Name of Policy Holder: Employers' Group."

As we do not have either Defendant's Exhibit 11 or Court's Exhibit 2 properly before us, we are unable to determine from this exchange the exact nature of the documents in question or their contents. Although we find, in examining the record, Court's Exhibit 2, we are not obliged to consider it because we do not go to the record to reverse. *Boren* v. *Qualls*, 284 Ark. 65, 680 S.W.2d 82 (1984). Consequently, we are unable to decide this issue on the merits.

## II. EXPERT TESTIMONY

Next, the Montgomerys argue that the trial court abused its discretion in allowing certain surgeons to testify as experts on Dr. Butler's behalf concerning the treatment of Crohn's disease by medication as distinguished from treatment by surgery.

With regard to the admissibility of expert testimony, we reiterated in *Hardy* v. *Bates*, 291 Ark. 606, 727 S.W.2d 373 (1987), that whether a witness may give expert testimony rests largely within the sound discretion of the trial court and that determination will not be reversed unless an abuse of discretion is found. Additionally, we have noted that expert testimony is admissible if it will aid the trier of fact in understanding the evidence or in determining a fact in issue. An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier to understand and draw its own conclusions. *Utley* v. *State*, 308 Ark. 622, 826 S.W.2d 268 (1992). Finally, we have consistently held that a jury is not bound to accept opinion testimony of experts as conclusive or to believe the testimony of experts any more than the testimony of other witnesses; the jury alone determines the weight to be given the evidence, and it may accept or reject all or any part of it that its members believe to be true. *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992).

In this case, the Montgomerys presented the expert testimony of Dr. Harris, a family practitioner, and Dr. Morton, a gastroenterologist, as to Mrs. Montgomery's tests, treatments, diagnoses, and surgery. Dr. Butler presented the expert testimony of three witnesses: 1) Dr. Mark Gibbs, a surgeon specializing in

the surgical treatment of Crohn's disease who was trained to understand its pathophysiology, etiology, epidemiology, and medical treatment, 2) Dr. Everett Tucker, Jr., a surgeon, who was frequently called to see patients with Crohn's disease, and 3) Dr. Ralph Ligon, a surgeon, who was familiar with the different types of medical regimens prescribed for patients with Crohn's disease.

■ Simply put, the record reflects that the trial court was extremely evenhanded in qualifying both party's witnesses as experts for the treatment of Crohn's disease. All of the witnesses were qualified to discuss Crohn's disease, their testimony aided the jury in understanding the evidence, and the jury was free to weigh the testimony based upon the particular qualifications of the individual doctor. Accordingly, the trial court did not abuse its discretion.

### III. PHRASE "GUILTY OF MEDICAL MALPRACTICE"

In their third point of error, the Montgomerys claim that the trial court erred in allowing and condoning the use of the phrase "guilty of medical malpractice" to be stated as law before the jury. During the cross-examination of Dr. Harris by counsel for Dr. Butler, the following exchange occurred:

MR. BEARD: Does that mean that the aggressive doctors are guilty of medical malpractice, or the conservative doctors are guilty of malpractice?

MR. BRAMHALL: Your Honor, we object to the term, guilty of medical malpractice. The test in this case is whether the physician acted below the standard of care for his particular specialty in an area. There is nothing in the law in the case or anything else that says anything about somebody being guilty of malpractice.

MR. BEARD: AMI 1501 uses that specific language.

MR. BRAMHALL: Uses that phrase?

MR. BEARD: Yes. I'm sorry; AMI 1501 talks about guilty of medical malpractice, your Honor.

THE COURT: Overrule the objection.

MR. BEARD: Thank you.

AMI 1501 addresses negligence of a medical professional and provides as follows:

> In [diagnosing the condition of] [treating] [operating upon] a patient, a [physician] [surgeon] [dentist] must possess, and, using his best judgment, apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing, engaged in the same [type of practice] [specialty] in the locality in which he practices, or in a similar locality. A failure to meet this standard is negligence.

■■  While it is clearly apparent that the instruction does not use the phrase "guilty of medical malpractice," Dr. Butler's counsel's misstatement in this context is at most an abstract statement of counsel that was cured when the trial court properly instructed the jury at the conclusion of the trial as to the content of AMI 1501. *See generally W.M. Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982) (it is the duty of the judge to instruct the jury, and each party to the proceeding has the right to have jury instructed upon the law of the case with clarity and in such a manner as to leave no ground for misrepresentation or mistake.) Furthermore, statements of counsel are not to be considered as evidence, and the trial court instructed the jury with AMI 101, which states, "You should not consider any rule of law with which you may be familiar unless it is included in my instructions. . . . You are to apply the law as contained in these instructions to the facts . . . ." As a result, we cannot say that this statement was prejudicial.

## IV.   LIMITATION OF WITNESSES

Finally, the Montgomerys assert that the trial court erred in unduly limiting their examination of witnesses. They specifically enumerate four instances that they claim to be error.

### A.   Impeachment and Cross-examination of Dr. Tucker

During cross-examination of Dr. Gibbs, counsel for the Montgomerys asked him about a letter he had written on February 27, 1989, and about a second letter report in which he had changed his opinion. Dr. Gibbs explained that he felt that he did not have all of the necessary information when he wrote the

first letter and that he subsequently wrote a second letter explaining his position when he was made aware of the medical treatment rendered to Mrs. Montgomery by Dr. Morton.

Later, during the cross-examination of Dr. Tucker, counsel for the Montgomerys handed him a copy of Dr. Gibbs's first letter and asked him about the letter's stated opinion that if medical treatment had been instituted at an earlier date then Mrs. Montgomery's condition would have been less severe and there would have been less removal of intestine. Dr. Butler's counsel objected, which objection was sustained by the trial court unless the Montgomery's counsel was willing to give Dr. Tucker both of Dr. Gibbs's reports. Counsel for the Montgomerys consequently gave both reports to the witness without objecting to the trial court's requirement.

Now, the Montgomerys argue that the trial court erred in requiring both reports to be used for cross-examination since the first report was used in an attempt to impeach or test the basis for the expert witness' opinions. However, as the Montgomerys failed to make this objection at trial, they are now precluded from raising it for the first time on appeal. *Stotts* v. *Johnson*, 302 Ark. 439, 791 S.W.2d 351 (1990).

### B. Trial Court's Comment on Testimony

During Dr. Gibbs's cross-examination by the Montgomerys' counsel, Dr. Gibbs was questioned at length about his two letter reports and the reason for the change in his opinion. Dr. Gibbs stated that when he wrote his first letter that he had met with the Montgomerys' counsel "in good faith" with the understanding that he had been provided with all of Mrs. Montgomery's medical records. After a further lengthy period of cross-examination, Dr. Gibbs stated that he suspected that he had not been provided with the second page of Dr. Woodard's report. At this point, the following exchange occurred between the trial court and Mrs. Montgomery's counsel:

TRIAL COURT: If there's some information missing the doctor should be able to say what it is; you should be able to get over this question.

MR. DUNCAN: Your Honor, he's . . . .

TRIAL COURT:     Y'all are just bantering back and forth with one another.

MR. DUNCAN:     It's a very important point, though. He's at least, implying . . . .

TRIAL COURT:     Well, I assume that I — we . . . .

MR. DUNCAN:     . . . that we . . .

TRIAL COURT:     I think we need to move on in this case . . .

MR. DUNCAN:     Your Honor, your Honor . . .

TRIAL COURT:     . . . somehow.

MR. DUNCAN:     . . . I'm going to tie this up, but if I understand his testimony, he's implying Mr. Bramhall and myself withheld that second page of that report from him.

TRIAL COURT:     *He's not implying it. He said he didn't have it and y'all didn't furnish it to him. That's not an implication. That's what he states as a fact.*

MR. DUNCAN:     Okay . . .

TRIAL COURT:     I didn't misunderstand that.

MR. DUNCAN:     . . . then I am going to probe into that, your Honor, because I don't believe that he has the recall to be able to state that, and that's what I'm doing right now.

TRIAL COURT:     He doesn't have the recall to state that.

MR. DUNCAN:     Your Honor, we could have given him that report . . .

TRIAL COURT:     Okay, argue . . .

MR. DUNCAN:     We can't be called as witnesses in our own case, and that's the whole point.

TRIAL COURT:     I didn't figure you would . . .

MR. DUNCAN:     We didn't know . . .

TRIAL COURT:     I apologize for interrupting. I didn't

want to take up any more time, so go ahead.

MR. DUNCAN: Okay.

(Emphasis added.)

Although the Montgomerys now claim that the emphasized language of the trial court was in fact a comment on the testimony, they again failed to make an objection during trial in order to preserve this issue for appeal. We therefore decline to discuss it. *See Stotts* v. *Johnson, supra.*

## C. *National Cooperative Crohn's Disease Study*

Next, the Montgomerys argue that the trial court erred in refusing to allow them the opportunity to question Dr. Gibbs about a study referred to as the National Cooperative Crohn's Disease Study (NCCDS). During the cross-examination of Dr. Gibbs about the NCCDS, counsel for Dr. Butler objected on the grounds that the witness had not established the authoritativeness of the study and because opposing counsel wanted to read particular sentences from the lengthy study. The trial court sustained the objection because Dr. Gibbs had not acknowledged that the study was authoritative.

■ Counsel for the Montgomerys then immediately proceeded to ask Dr. Gibbs similar questions regarding the study to which he gave detailed answers. The Montgomerys' counsel also utilized the NCCDS during their examination of Dr. Tucker, Dr. Ligon, and Dr. Butler; this extensive use of the NCCDS by the Montgomerys in their examination of Dr. Butler's witnesses negates any claim that they were prejudiced by the trial court's ruling.

## D. *Legal Standard*

Finally, the Montgomerys claim that the trial court applied an incorrect legal standard regarding the form of the opinions expressed by their expert medical witness, Dr. Harris. The trial court sustained Dr. Butler's objections to Dr. Harris's testimony when he was unable to state that Mrs. Montgomery might or might not have had Crohn's disease in January 1987 and that she might or might not have ultimately had surgery if steroid treatment had commenced earlier.

The Montgomerys' counsel asked Dr. Harris on direct examination whether Mrs. Montgomery had Crohn's disease in January 1987, to which Dr. Harris replied that "[s]he probably did." Dr. Butler's counsel objected on the ground that the question and the answer were not stated "to a reasonable degree of certainty or probability." The trial court sustained the objection, and counsel for the Montgomerys did not object to the ruling. Instead, the Montgomerys' counsel simply rephrased the question, and Dr. Butler's counsel again raised the same objection.

The trial court stated, without objection by the Montgomerys' counsel, "I would interpret the response 'probable' to be synonymous to 'possible,' and that's the objectionable part of the doctor's response . . . ." The Montgomerys' counsel accepted the trial court's statement and merely proceeded to ask the question as follows:

> Q:    Dr. Harris, within a reasonable degree of medical certainty, did Ms. Montgomery have or did she not have Crohn's Disease in January of '87?
>
> A:    I can't answer that absolute.
>
> Q:    We are not asking for an absolute answer. We are saying within a reasonable degree of medical certainty.
>
> A:    I still can't answer it except possible or probably. In my opinion she had it, but possibly.

Dr. Harris's final response came in without objection from Dr. Butler, and the Montgomerys' counsel continued with other questions. Once again, the Montgomerys failed to object to this point of error and are consequently precluded from raising it on appeal. *See Stotts* v. *Johnson, supra.*

Accordingly, the judgment of the trial court is affirmed.