JOHN H. PARKER CONSTRUCTION CO. *v.* Lonnie L. ALDRIDGE, Shirley A. Aldridge, H.E. Treadway and Glenda Treadway

92-608                                    847 S.W.2d 687

Supreme Court of Arkansas
Opinion delivered February 15, 1993

*McMillian, Turner & McCorkle*, by: *F. Thomas Curry*, for appellant.

*Chris E. Williams*, for appellee.

STEELE HAYS, Justice. Appellees brought this action against John H. Parker Construction Company (appellant) for damage done to trees resulting from the laying of a water line on residential property belonging to the appellees. The jury returned a verdict in favor of the appellees and Parker has appealed. We find no merit in the three points of error assigned to the rulings of the trial court.

The Northern Malvern Water Users Association undertook to install a municipal water system in the area of Rockport in Hot Spring County. The association employed Affiliated Engineers to oversee the project and contracted with Parker to dig the trenches and install the water pipes. The association obtained easements from a number of land owners, including Lonnie and Shirley Aldridge and H.E. and Glenda Treadway, the appellees.

When the construction was completed trees on the property of the appellees died and had to be removed. Appellees brought this action alleging negligence in the selection of the route of the water line and in excavating within six feet of the trunk of the trees.

Parker first contends the trial court erred in permitting Ronnie Ledbetter to testify as an expert with respect to the standard of care applicable to digging trenches for water lines. Ledbetter testified he operated his own excavation contracting business engaging in digging trenches and burying water lines. Ledbetter described a number of projects involving water, utility, or telephone lines in which he had been involved, including installing several miles of water line for the Perla Water Department, water lines for the Highway 9 Water Department, and water and sewer lines for a trailer park. Currently he did all the repair work for the Perla Water Department. Ledbetter said he

had been involved in laying water lines and utilities for twenty-two years. As he was not a licensed contractor, he was limited to contracts of less than $25,000. He was familiar with the type of work done by Parker in this case and had been engaged in the same kind of work except that it was below the $25,000 limit applicable to unlicensed contractors.

Parker maintains that Ledbetter should not have been qualified as an expert because he was not a licensed contractor. Parker likens it to having a nurse give opinion testimony on the actions of a doctor. Parker cites a Texas case, *Prellwitz* v. *Cromwell, Truemper, Levy, Parker and Woodsmall*, 802 S.W.2d 316 (Tex. Ct. App. 1990), where it was held that to establish the standard of care for a licensed professional, a licensed professional in that field must testify. That was a malpractice suit against an architectural and engineering firm turning on whether proper stress tests had been used to determine whether pipe could withstand pressure at certain levels. Parker lists other states as embracing the same rule, but those cases involve physicians, attorneys or chiropractors. Parker does not challenge the qualifications or expertise of Ledbetter within the scope of his testimony, rather, he urges that we should adopt the same standard for expert witnesses as in *Prellwitz, supra.*

■ We are not persuaded by the argument, as we believe it would be a departure from the rule announced in our previous cases. In *Yandell* v. *State*, 262 Ark. 195, 555 S.W.2d 561 (1977) we were asked to overturn the ruling of the trial court permitting a physician from Mexico to give expert medical testimony, although unlicensed in the United States. We held that expert testimony may be given by individuals qualified by experience, knowledge or training. We adhere to that standard. *See Dildine* v. *Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984).

Second, Parker argues that the trial court erred in refusing to instruct the jury that when landowners grant an easement they waive damages arising from the normal construction of the right-of-way and the landowners may recover only if they prove the work was done unnecessarily, negligently or unskillfully. The instruction was drawn from the decision in *St. Louis, Iron Mountain & Southern Railway Co.* v. *Walbrink*, 47 Ark. 330, 1 S.W. 545 (1886).

■ We are not persuaded the trial court erred in refusing the instruction. It may be an accurate statement of the law in general terms, but the language tended to bind the jury to a particular result and was abstract in the sense that in *Walbrink* there was neither an allegation nor proof that the work performed pursuant to the easement was negligently performed. *Missouri Pacific Railroad Co. v. Ward*, 252 Ark. 74, 477 S.W.2d 835 (1972); *Missouri Pacific Railroad Co. v. Boley*, 251 Ark. 964, 477 S.W.2d 468 (1972). The trial court gave the AMI instructions on negligence and we are satisfied they covered the issues pertinent to the case.

Third, Parker insists the trial court should have granted its motion for a directed verdict at the end of the plaintiffs' proof and again at the close of the case. Parker relies on the *Walbrink* case, *supra*, and *Daniels v. Board of Directors of St. Francis Levee District*, 84 Ark. 333, 105 S.W. 578 (1907). Both involved easements and damage to the landowners from changes effected by the easements. In *Walbrink* the railroad company removed fences and altered the flow of a creek resulting in damage to adjoining property. In *Daniels* the damage was attributable to a levee, constructed pursuant to the easement. In the former we reversed a judgment for the plaintiffs and in the latter, we affirmed the trial court's directed verdict for the levee district. But in neither case was there evidence that the work was negligently performed, a distinguishing factor from the case at hand.

Here it was shown that some of the right of way permits, including those of the appellees, were "blanket easements" in that they did not specify the location of the water line, but described the entire tract of the landowners. When the line was installed, the district acquired a ten foot easement to maintain the line as determined by the installation. Wade Butler of Affiliated Engineers testified "it would be fair to say that the water line zig-zags throughout this particular project. It did that because we tried to miss trees." Ronnie Marshall, project engineer, testified, "We were strictly supervising. We have no control over where the contractor is going to dig a trench. If Mr. Parker decides to dig a trench within ten feet of a tree, that's Mr. Parker's problem under the contract. Our position was to give the contractor an area of work and to supply him with plans and specifications. But we

didn't control the course and the direction of the project. . . We look to the contractor for any remedies or deficits in the job." In the opinion of Ronnie Ledbetter the water lines could have been laid in an alternate route, that it was the duty of the contractor to inform the engineer if the designated route encounters structures, including trees, and that Parker had a duty to the appellees. He stated, "There is no doubt in my mind that Mr. Parker's actions of going across the property and cutting close to the trees caused damage to the trees. It is my position that John Parker Construction Company killed the trees."

When that and similar testimony is given its highest probative value in favor of the non-moving party (appellee), as we are obliged to do in reviewing the denial of a motion for a directed verdict, we are fully satisfied the motion was properly denied. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991).

Affirmed.