Randy James JONES *v.* STATE of Arkansas

CR 92-1361                                          862 S.W.2d 242

Supreme Court of Arkansas
Opinion delivered October 4, 1993

*Gibbons Law Firm, P.A.*, by: *David L. Gibbons*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y

Gen., for appellee.

STEELE HAYS, Justice. Appellant Randy James Jones was tried and convicted of the murder of David Cains. He was sentenced to life imprisonment without parole. On appeal he raises two points for reversal. We affirm the judgment of conviction.

The salient facts, given from the state's perspective, are these: Expected to testify in a drug trial the following day, David Cains was murdered in the yard of his Pottsville home about 6:30 on the morning of September 4, 1991. The weapon used was a rifle with telescopic sight. Cains's eleven-year-old daughter, Chrissy, and fourteen-year-old son, Davey, witnessed the murder. Davey saw a man come from behind a tree with two guns. Chrissy heard shots, saw her father fall to the ground and watched as a man fired a third time at pointblank range. The man fled in Cains's blue Ford van. Several neighbors observed the incident from some distance and assumed that David Cains was shooting a dog. The man was described as tall, slender, with dark hair and wearing a white tee shirt and blue jeans. About forty-five minutes later, appellant entered a liquor store at the Blackwell exit on Interstate I-40 and bought a package of cigarettes. He was wearing blue jeans but no shirt.

Sheriff's deputies recovered three spent cartridges from a .270 rifle in the yard and, not far away, a stolen black pickup truck containing a gun case. Less than an hour after the murder police located the van abandoned near the liquor store at the Blackwell exit. In the adjacent woods were found a .270 rifle with scope and a .45 calibre pistol. Around three o'clock that afternoon, the appellant was apprehended in the woods. A lineup of six individuals was conducted and Chrissy and Davey Cains readily identified appellant as the man who shot their father. Fibers from the rifle were matched to the gun case in the stolen pickup truck. The owners of the pickup, rifle, and gun case identified those objects as belonging to them and as having been stolen in the vicinity of Conway prior to the crime.

I

Jones submits it was error for the trial court to deny his motion for a directed verdict. A motion for a directed verdict is a

challenge to the sufficiency of the evidence. *Prince* v. *State*, 304 Ark. 692, 805 S.W.2d 46 (1991).

The general rule with respect to the sufficiency of the evidence is that the evidence to support a conviction, whether direct or circumstantial, must be of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. *Smith* v. *State*, 308 Ark. 390, 824 S.W.2d 838 (1992). We will affirm the verdict of the trial court, if it is supported by substantial evidence, and circumstantial evidence may constitute substantial evidence. *Hill* v. *State*, 299 Ark. 327, 773 S.W.2d 424 (1989).

To be sufficient to sustain a conviction, the circumstantial evidence must exclude every other reasonable hypothesis consistent with innocence. *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992). This becomes a question for the fact-finder to determine. *Id.* In determining whether there is substantial evidence, the court reviews the evidence in the light most favorable to the appellee. *Pope* v. *State*, 262 Ark. 476, 557 S.W.2d 887 (1977). Guilt may be proved, even in the absence of eyewitness testimony, and evidence of guilt is no less substantial because it is circumstantial. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984).

The evidence connecting Randy Jones with the crime was both circumstantial and direct. Chrissy Cains identified appellant at the lineup and again in the courtroom. She said there was no doubt about his identity. Appellant points out that because she saw the perpetrator for less than thirty seconds and only from the side, her testimony is unreliable. But these are issues for the jury. *Coley* v. *State*, 304 Ark. 304, 801 S.W.2d 647 (1991).

Circumstantially, appellant's presence at the liquor store soon after the crime and at the time of his arrest, the location of the rifle and pistol, the matching fibers of the rifle and gun case, the proximity of the gun case and black pickup to the Cains's residence, even the fact that appellant appeared to be fleeing from arrest, are factors the jury could consider in determining appellant's guilt. *Ferguson* v. *State*, 298 Ark. 600, 769 S.W.2d 418 (1989). Additionally, at the time of his arrest appellant had a distinctive one-half inch diagonal abrasion just above the bridge of his nose. A sheriff's investigator experienced in weaponry

testified that the kick of a high-powered rifle, when equipped with a telescopic sight, tends to leave "an ignorant mark" consistent with the mark on appellant's forehead.

The evidence recounted above pointed convincingly to the appellant as the perpetrator, in the light of which, we can conceive of no other reasonable hypothesis consistent with appellant's innocence and we therefore affirm the ruling of the trial court as to the sufficiency of that evidence.

## II

Second, appellant maintains the trial court erred in refusing to allow an expert witness to testify concerning factors affecting eyewitness perception. Appellant submits the only direct evidence linking appellant to the murder of David Cains was the lineup and courtroom identification by an eleven-year-old child, Chrissy Cains, and the lineup identification by Davey Cains, whose evident limitations led the trial court to exclude his testimony at trial. When Davey, who was described as slow, was called to the witness stand, the defense objected on grounds of competence. The trial judge reserved a ruling but after questioning Davey found his answers so unresponsive that he declined to permit Davey to testify. When the state later rested, the defense moved that earlier testimony that Davey had identified appellant at the lineup be stricken. The motion was denied.

Appellant proffered the testimony of Dr. Ira Bernstein, a professor of psychology and an authority on eyewitness perceptions and the effect of misconceptions. Dr. Bernstein has identified certain factors as influencing eyewitness perception, among them: expectation, confidence, judgment, attentional selection, stress, visibility, etc. The state objected and the trial court sustained the objection after determining that Dr. Bernstein's proposed testimony was general rather than specific to the identification of Chrissy and Davey Cains.

This issue was addressed recently in *Utley* v. *State*, 308 Ark. 622, 826 S.W.2d 268 (1992). We noted that the trial court has wide discretion in evidentiary matters and we found no abuse of discretion in refusing such testimony on the ground that it was a matter of common knowledge and would not assist the trier of fact. We quoted with approval language from *Criglow* v. *State*,

183 Ark. 407, 365 S.W.2d 400 (1931):

> The question whether these witnesses were mistaken in their identification, whether from fright or other cause, was one which the jury, and not an expert witness, should answer. This was a question upon which one man as well as another might form an opinion, and the function of passing upon the credibility and weight of testimony could not be taken from the jury. [Citations omitted.]

Appellant does not ask us to overrule *Utley*; rather, that we should recognize an important distinction between the two cases. In *Utley*, defense counsel was able to cross-examine the eyewitness on the reliability of the identification, whereas in the case at bar, the jury was told that Davey Cains had picked appellant out of a lineup yet the defense had no opportunity to cross-examine Davey Cains. Appellant cites A.R.E. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

We first point out that appellant's reference to Rule 702 is raised initially on appeal. Beyond that, the issue rests with the discretion of the trial court and for a number of reasons we cannot say that discretion was misused. The jury was told that Davey had picked appellant from one lineup, but was also told by a defense witness that at a later time Davey had picked someone other than the appellant. Moreover, the defense had permitted two witnesses for the state, Officer Aaron Duvall and Deborah Lay, to testify without objection that Chrissy and Davey had picked the appellant out of the lineup. In sum, we do not believe that expert testimony touching only generally on factors which influence eyewitness perception was so essential to the jury that its exclusion constitutes an abuse of discretion.

In oral argument appellant referred to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, ____ U.S. ____, 113 S.Ct. 2786 (1993), decided after briefs were filed in this case. *Daubert* is a civil case in which the plaintiffs allege that birth defects were caused by Bendectin, a product of the defendant. The District

Court dismissed the claims by summary judgment, finding that the plaintiffs' expert testimony failed to meet the applicable "general acceptance" standard within the scientific community. The Court of Appeals affirmed on the strength of *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923). On appeal, the Supreme Court reversed, holding that *Frye* was superseded by Rule 702 of the Federal Rules of Civil Procedure.

We have no criticism of the *Daubert* case. Indeed, this court previously reached the same conclusion in *Prater* v. *State*, 307 Ark. 180, 820 S.W.2d 429 (1991), rejecting the *Frye* standard for the relevancy approach implicit in A.R.E. 401. However, *Daubert* has little relevance to this case. Expert testimony in *Daubert* was critical to a determination of whether Bendectin was the cause of birth defects, and was excluded, not because it would not assist the jury, but upon the erroneous conclusion that it lacked general acceptance by the scientific community. That was not a factor here.

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Finding no error, we affirm the judgment.