The Honorable Stanley Russ State Senator P.O. Box 787 Conway, Arkansas 72032
Dear Senator Russ:
This is in response to your request for an opinion, on behalf of Mr. Roger Brown, Director of The Project to End Child Abuse Hysteria, regarding admissibility of certain types of expert testimony in child abuse cases. In the correspondence attached to your request, Mr. Brown references Daubert v. Merrell DowPharmaceuticals, Inc., 509 U.S., 125 L.Ed.2d 469, 113 S.Ct. 2786
(1993), and he poses the following questions, which I have restated in part, with regard to this case:
 1. Please review the Daubert case and determine the impact this case will have on the court system in Arkansas.
 2. Are the theories, techniques, and diagnostic instruments upon which Arkansas psychiatrists, psychologists, counselors, and social workers base their practice not "falsifiable" and therefore expert testimony based upon them not admissible as expert testimony under Daubert?
 3. Are these theories, techniques, and diagnostic instruments valid science under the Daubert
standards?
 4. Are the lists of indicators for identifying abused children and child abusers used by the Department of Human Services (DHS), law enforcement agencies, psychiatrists, psychologists, counselors, and social workers, including DSM-III-R, not "falsifiable," and is expert testimony based upon them inadmissible?
 5. Is it possible to construct guidelines for applying the Daubert standards?
 6. Are there any issues raised in the following articles which are not valid:
 (1) Gray, The Assault on Fraud, Time, Nov. 29, 1993, at 47.
 (2) Jaroff, Lies of the Mind, Time, Nov. 29, 1993, at 52.
 (3) Underwager, A Paradigm Shift for Expert Witnesses, Vol. 5, Issues in Child Abuse Accusations, 156 (1993).
 (4) The Works of Sir Karl Popper (numerous publications cited).
With regard to the foregoing questions, I am unable to give responses, as the questions involve matters which are beyond the purview of an attorney general's opinion. To answer the foregoing questions would involve making such determinations as what is valid science, whether the theories and techniques used by certain professionals are valid, and whether issues raised in magazine and journal articles lack validity. In the context of admissibility of expert testimony, some of these determinations fall solely within the province and discretion of courts. In an attempt to provide some assistance in this matter, however, I will provide a general discussion of the Daubert case and of the Arkansas Rules of Evidence as they relate to the admissibility of expert testimony.
In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. ___,125 L.Ed.2d 469, 113 S.Ct. 2786 (1993), the United States Supreme Court was asked to determine the appropriate standard for admitting expert scientific testimony in a federal trial. Specifically at issue in the case was whether the standard enunciated in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), which provides that novel scientific evidence may be admissible only when the theory upon which the evidence is based is accepted within the relevant scientific community, is a prerequisite for the admissibility of expert testimony under Rule702 of the Federal Rules of Evidence. Rule 702 of the Federal Rules of Evidence provides the following:
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In Daubert, the United States Supreme Court held that the Frye test was superseded by adoption of the Federal Rules of Evidence, and therefore, "general acceptance" of a scientific theory on which proposed expert testimony is based is not a requirement under Rule 702 of the Federal Rules of Evidence. In summarizing some of the requirements for a proffer of expert scientific testimony, the Court stated the following:
 [T]he trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. We are confident that federal judges possess the capacity to undertake this review. Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test. But some general observations are appropriate.
 Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." Green, at 645. See also C. Hempel, Philosophy of Natural Science 49 (1966) ("[T]he statements constituting a scientific explanation must be capable of empirical test"); K. Popper, Conjectures and Refutations: The Growth of Scientific Knowledge 37 (5th ed. 1989) ("[T]he criterion of the scientific status of a theory is its falsifiability, or refutability, or testability").
Daubert, 125 L.Ed.2d at 482-483.
With regard to this case, it initially should be emphasized thatDaubert concerns the Federal Rules of Evidence which apply infederal trials. [Emphasis added.] Thus, Daubert has no direct bearing on the admissibility of expert testimony in state cases in Arkansas, since Rule 702 of the Arkansas Rules of Evidence will govern in those cases. [Emphasis added.] It is possible the Arkansas Supreme Court could use Daubert and other federal cases in construing Rule 702 of the Arkansas Rules of Evidence since the language therein is identical to the language in Rule702 of the Federal Rules of Evidence. However, the only reference to the Daubert case made thus far by the Arkansas Supreme Court appears in Jones v. State, 314 Ark. 289, 862 S.W.2d 242 (1993), wherein the Court stated the following: "We have no criticism of the Daubert case. Indeed, this court previously reached the same conclusion in Prater v. State, 307 Ark. 180,820 S.W.2d 429 (1991), rejecting the Frye standard for the relevancy approach implicit in A.R.E. 401." Thus, with regard to the admissibility of novel scientific evidence, it is obvious that the Arkansas Supreme Court believes the Daubert case has little impact in Arkansas, since, as stated in Jones, Arkansas had rejected the Frye standard prior to the decision in Daubert.
Accordingly, if a state case in Arkansas involves a question regarding novel scientific evidence, the Prater relevancy approach will be used to determine the admissibility of such evidence. The Arkansas Supreme Court has described this approach as follows:
 The relevancy approach requires that the trial court conduct a preliminary inquiry which must focus on (1) the reliability of the novel process used to generate the evidence, (2) the possibility that admitting the evidence would overwhelm, confuse or mislead the jury, and (3) the connection between the novel process evidence to be offered and the disputed factual issues in the particular case.
 Under this relevancy approach, reliability is the critical element. . . . The relevancy approach, unlike the Frye standard, permits, but does not require, a referendum by the relevant scientific community to determine the reliability of the technique. Many times that factor alone will determine the issue. On the other hand, courts may look to a number of other factors which bear upon reliability. These include the novelty of the new technique, its relationship to more established modes of scientific analysis, the existence of specialized literature dealing with the technique, the qualifications and professional stature of expert witnesses, and the non-judicial uses to which the scientific techniques are put.
Prater, 307 Ark. at 186.
Rules 702 through 706 of the Arkansas Rules of Evidence pertain to the admissibility of expert testimony in state cases. The general test for admissibility of expert testimony under the Arkansas Rules of Evidence is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact issue; "[a]n important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier to understand and draw its own conclusions." Montgomery v. Butler, 309 Ark. 491, 496,834 S.W.2d 148 (1992); See also Utley v. State, 308 Ark. 622,826 S.W.2d 268 (1992); Russell v. State, 289 Ark. 533,712 S.W.2d 916 (1986). Expert testimony may be given by individuals qualified by experience, knowledge or training. John H. ParkerConstr. Co. v. Aldridge, 312 Ark. 69, 847 S.W.2d 687 (1993). "Whether a witness may give expert testimony rests largely within the sound discretion of the trial judge, and that determination will not be reversed absent an abuse of discretion." Ford MotorCo. v. Massey, 313 Ark. 345, 350, 855 S.W.2d 897 (1993). "If there is no sound and reasonable basis for expert testimony, the testimony is subject to being stricken. If, however, the cross-examination shows that the testimony has a weak or questionable basis, that goes to the weight and credibility to be given the testimony rather than to its admissibility." Id. at 349. In this regard, the weight and value to be given to the testimony of expert witnesses lies within the exclusive province of the jury. Id. at 350.
In sum, the Daubert case has no direct bearing on state cases in Arkansas since that case pertains to the Federal Rules of Evidence. However, as stated herein, the Arkansas Supreme Court could look to the case when construing the Arkansas Rules of Evidence, if it chose to do so. With regard to novel scientific evidence in state cases in Arkansas, the relevancy approach outlined in the Prater case currently governs the admissibility of such evidence. As for expert testimony which is based on scientific evidence that is not regarded as "novel," the applicable rules on admissibility of such expert testimony will be those outlined above.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh