Rodney Dale UTLEY *v.* STATE of Arkansas

CR 91-189                                      826 S.W.2d 268

Supreme Court of Arkansas
Opinion delivered March 16, 1992

*Joseph C. Self*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Associate Justice. The appellant, Rodney Dale Utley, was convicted of aggravated robbery and sentenced to eighty years imprisonment as a habitual offender. He argues the Trial Court erred by not allowing an expert witness to testify about factors affecting the reliability of eyewitness testimony. He raises other issues which we decline to consider as they were presented to the Trial Court only in an untimely motion for a new trial. We find no abuse of discretion in the exclusion of the proffered expert testimony as the testimony would not have assisted the jury and would have invaded the province of the jury.

On November 6, 1989, at 9:57 p.m., a man entered a Subway Sandwich Shop in Fort Smith and asked two employees, Charlene Guinn and Vicki Duncan, if they had ever been robbed. He showed them a pistol and told them to give him the money in the cash register. Guinn testified she became so frightened she could not move. Duncan pushed Guinn toward the register, and Guinn removed money which she gave to Duncan who handed it to the man who then told them to get down on the floor and left.

Both witnesses described the culprit as being 5'10" tall with dark hair, dark eyes, and a mustache. He was wearing a light-weight tan jacket. They said the incident took approximately two minutes. Guinn testified she looked at the man for about sixty seconds. She also stated she was very frightened and focused most of her attention on the gun. Guinn tried not to look at the man's face because it scared her. Duncan testified she looked at the man's face for approximately thirty seconds. She also admitted focusing part of her attention on the gun. Both witnesses

identified Utley in a photographic line-up and at trial as the man who robbed the store. The women were certain of the accuracy of their identifications.

Utley was arrested in connection with another offense in Louisiana, and the police seized a plastic pellet pistol and a tan jacket from his car. Guinn and Duncan stated the gun seized looked like the gun used in the offense, and the jacket seized looked like the jacket the robber wore.

Utley claimed the two witnesses were mistaken in identifying him, and he presented an alibi defense though the testimony of Angela Morgan and John Hamilton. Morgan was a prostitute living at the Colonial Motel in Fort Smith. She testified Utley was in her motel room on November 6 at 9:36 p.m. when she left to visit a friend. When she returned at 10:41, Utley was still in the room and remained there until friends helped him start his car at 11:30. Records from a cab company corroborated Morgan's testimony that she left the motel at 9:36 and returned at 10:41. Hamilton lived with Morgan. He stated Utley was in their motel room from approximately 9:30 until 11:30 on November 6th.

Utley proffered the testimony of Dr. Ira Bernstein about factors affecting eyewitness perception, including, (1) the negative correlation between the confidence of an identification and its accuracy; (2) the effect of stress on the accuracy of an identification; (3) the effect presence of a weapon has on the accuracy of an identification, and (4) the effect of a subsequent photographic line-up on the accuracy of an identification. Dr. Bernstein stated he would not specifically testify whether Guinn and Duncan were accurate in identifying Utley.

The Trial Court refused to allow the testimony because (1) Utley was given the opportunity to cross-examine the witnesses and argue to the jury on the areas the expert would testify, (2) the jury would not receive appreciable help from the testimony because most of the matters could be understood by a jury of average intelligence, and (3) the probative value of the testimony was outweighed by the potential for prejudice.

The jury returned a guilty verdict on the aggravated robbery charge. A judgment and a commitment order were entered August 22, 1990, and Utley was advised he had 30 days to move

for a new trial pursuant to former Ark. R. Crim. P. 36.4. Utley moved for new trial on October 22, 1990, alleging, among other things, ineffective assistance of counsel. The motion was denied.

### a. Expert testimony

Utley contends Dr. Bernstein's testimony should have been admitted and cites cases from other jurisdictions supporting his argument. *See, e.g., State* v. *Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983); *People* v. *McDonald*, 37 Cal. 3d 351, 690 P.2d 709, 208 Cal. Rptr. 236 (1984); *State* v. *Moon*, 145 Wash. App. 692, 726 P.2d 1263 (1986).

In evidentiary determinations, a trial court has wide discretion. We do not reverse absent abuse. *Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991). The general test for admissibility of expert testimony is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702 (1991); *Russell* v. *State*, 289 Ark. 533, 712 S.W.2d 916 (1986). An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier to understand and draw its own conclusions. *Russell* v. *State, supra.*

Both this Court and the Court of Appeals have upheld a trial court's decision not to allow expert testimony on reliability of eyewitness identifications. In *Criglow* v. *State*, 183 Ark. 407, 36 S.W.2d 400 (1931), an expert witness was called to testify about whether two eyewitnesses were mistaken in identifying Criglow. The Trial Court excluded the testimony, and we affirmed holding:

> The question whether these witnesses were mistaken in their identification, whether from fright or other cause, was one which the jury, and not an expert witness, should answer. This was a question upon which one man as well as another might form an opinion, and the function of passing upon the credibility and weight of testimony could not be taken from the jury. [citations omitted].

In *Caldwell* v. *State*, 267 Ark. 1053, 594 S.W.2d 24 (Ark. App. 1980), the testimony of a qualified expert in the field of human perception was offered to help the jury understand how human perception works and what factors influence it. The Court of Appeals upheld the Trial Court's decision not to allow the

testimony as it would have invaded the province of the jury. The jury was fully capable of assessing the eyewitnesses' ability to perceive and remember without the assistance of expert testimony.

We cited the *Caldwell* case with approval in a case involving expert testimony on the effect of a suggestive photographic line-up on eyewitness perception. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982). We held the introduction of the expert testimony would invade the function of the jury.

The majority of cases in other jurisdictions uphold trial court decisions refusing to allow this type of expert testimony. The most. common reason given is that it does not help the jury and invades their function. *See, e.g., United States* v. *Hudson*, 884 F.2d 1016 (7th Cir. 1989); *United States* v. *Langford*, 802 F.2d 1170 (9th Cir. 1986); *State* v. *Kemp*, 199 Conn. 473, 507 A.2d 1387 (1986); *State* v. *Reed*, 226 Kan. 519, 601 P.2d 1125 (1979); *State* v. *Gurley*, 565 So. 2d 1055 (La. App. 4th Cir. 1990); *State* v. *Fox*, 98 Or. App. 356, 779 P.2d 197 (1989).

■ We find no abuse of discretion in the Trial Court's decision that Dr. Bernstein's testimony was a matter of common understanding and would not assist the trier of fact. For example, the fact that stress might affect the reliability of an identification is easily understood. Utley was given adequate opportunity to cross-examine the eyewitnesses on the reliability of their identifications. In fact, defense counsel asked witnesses whether the weapon diverted their attention from the man's identity. He also asked several questions regarding the effect of the photographic line-up on the in-court identifications. Expert testimony could have hindered the jury's ability to judge impartially the credibility of the witnesses and the weight to be accorded their testimony. *Smith* v. *State*, 258 Ark. 601, 528 S.W.2d 389 (1975).

### b. New trial

Utley raised several issues in a motion for new trial filed two months after judgment was entered. Rule 36.4 provided in pertinent part:

> The trial judge must address the defendant personally and advise the defendant that if the defendant wishes to assert that his or her counsel was ineffective a motion for a

new trial stating ineffectiveness as a ground must be filed within thirty (30) days from the date of pronouncement of sentence and entry of judgment.

■ Utley did not file his motion within 30 days and did not comply with Rule 36.4. Nor did he comply with Ark. R. Crim. P. 36.22 which requires a motion for a new trial to be filed prior to the time fixed for filing notice of appeal. The motion was untimely. *Chisum* v. *State*, 274 Ark. 332, 625 S.W.2d 448 (1981); *Smith* v. *State*, 301 Ark. 374, 784 S.W.2d 595 (1990).

Affirmed.