Jimmy HIGGINS *v.* STATE of Arkansas

CR 94-52                                           879 S.W.2d 424

Supreme Court of Arkansas
Opinion delivered July 11, 1994

*Bob Keeter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Pamela Rumpz*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Jimmy Higgins, the appellant, was convicted of two counts of rape. He was sentenced to two 40-year terms of imprisonment to be served consecutively. His first point of appeal is that the Trial Court erred in failing to grant his motion for directed verdict on each count because the State did not prove the date each alleged offense occurred. We decline to address that point because it was not raised at the trial.

*Pilcher* v. *State*, 303 Ark. 335, 796 S.W.2d 845 (1990). He also contends in his first point of appeal that his motion to dismiss the second count should have been granted due to improperly laid venue. We hold venue was properly laid because there was evidence that the offense described in each count occurred in Polk County.

In his second point, he argues an incriminating statement he gave to a police officer was not given voluntarily and should have been suppressed because he was questioned after invoking his right to counsel. We hold the evidence does not support his contention that he asked for counsel.

Third, he contends the prosecution should have been dismissed because a magistrate who authorized his arrest was improperly appointed. We hold the validity of the appointment of the magistrate is immaterial in the circumstances presented. The judgment is affirmed.

Mr. Higgins was arrested for DWI II on September 26, 1992. Deputy Sheriff Hopper testified that he became involved with Mr. Higgins on August 3, 1992, when he was informed by a Department of Human Services employee that Mr. Higgins' two sons had given statements alleging that Mr. Higgins had forced them to engage in acts of fellatio. On that date at 6:30 or 7:00 p.m. he went to the jail and informed Mr. Higgins he was under arrest for rape. He read the *Miranda* warnings and asked if Mr. Higgins would like to make a statement, and Mr. Higgins responded affirmatively. Deputy Hopper took Mr. Higgins to an office where he read an "interrogation rights form," asking whether each of the rights was understood, and Mr. Higgins initialed each question as it was repeated.

On cross-examination Deputy Hopper said that Mr. Higgins had asked, before the questioning began, "Do you think I need a lawyer?" to which Deputy Hopper replied, "You will have to have one."

The interrogation lasted from around 7:00 p.m. until 11:40 p.m. A tape recording was made of the last few minutes of the questioning, and it shows that Mr. Higgins admitted to engaging in fellatio with his children in Wickes, the Polk County town where his ex-wife and mother of the children lived. While he

remembered that his older son was with him in the car on September 26, 1992, he could not remember any sexual activity with him that evening.

According to Deputy Hopper, the interrogation took so long because the subject was very "delicate" with Mr. Higgins, and they went into great detail about Mr. Higgins' other homosexual experiences and abuse he had received years ago as a child. The conversation also touched on Mr. Higgins' alcohol and drug problems and his attempts at suicide. The Deputy testified he took a great deal of time, provided Mr. Higgins with coffee, food, cigarettes, and opportunity to use the bathroom. He denied knowledge that Mr. Higgins had been declared incompetent, a fact to which Mr. Higgins testified. He also denied any coercive measures were used, and specifically denied Mr. Higgins' allegation that he threatened Mr. Higgins with the prospect of having to speak with another, much meaner officer if Mr. Higgins declined to talk to him.

Other facts will be provided in the course of discussion of the points of appeal.

### 1. Directed verdict and dismissal motions

These motions were based on improperly laid venue. To begin with, "The State is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction or venue." Ark. Code Ann. § 5-1-111(b). That is so unless the defendant produces evidence to dispute the propriety of, in this case, the venue of the trial. *Dix* v. *State*, 290 Ark. 28, 715 S.W.2d 879 (1986). Mr. Higgins apparently is relying on the testimony of the children to supply the necessary proof. While we have strong doubt whether he has overcome the presumption provided by the statute, we will address the evidence.

### a. Count I

Count I alleged that rape occurred on or about July 26, 1992. The motion to dismiss and the motion for directed verdict were based on the contention that there was no showing that the offense occurred in Polk County.

The older son, who was 10 at the time, said he was

forced to take his father's penis in his mouth as they were driving from DeQueen, which is in Sevier County, to Grannis, which is in Polk County. He said, "It was in DeQueen and Grannis. It happened twice that same night." That statement constitutes sufficient evidence that the offense occurred in Polk County.

### b. Count II

Count II alleged that acts of fellatio had occurred between July and December, 1990. In his statement to Deputy Hopper Mr. Higgins referred to one act in Wickes which occurred late in 1990. He contends that his confession, standing alone, is not sufficient to support the finding that it occurred in Polk County. The only authority cited is Ark. Code Ann. § 16-89-450 which has to do with admissibility of confessions generally and is not relevant to this point.

We suspect the citation was meant to be to Ark. Code Ann. § 16-89-111(d) which provides, "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed." That is the so called *corpus delicti* requirement, and we have consistently held that it requires only a showing that the offense occurred and nothing more. *Hart* v. *State*, 301 Ark. 200, 783 S.W.2d 40 (1990); *McQueen* v. *State*, 283 Ark. 232, 675 S.W.2d 358 (1984).

The younger son testified that acts of fellatio occurred several years ago at Mr. Higgins' house in DeQueen and he could not remember if they had occurred any other place. That is enough to show that the offense occurred, and it is hardly the kind of testimony we would require to overcome the presumption that venue was properly laid and the Trial Court had jurisdiction of the offense alleged.

### 2. Suppression of confession

### a. Voluntariness

Mr. Higgins contends his confession was not voluntarily given. The only facts he recites as giving rise to a conclusion that he was coerced are the duration of the interrogation and the disputed threat that he would have to talk to a meaner officer if he did not talk with Deputy Hopper.

■ . The voluntariness of an inculpatory statement by an accused is determined by the Trial Court on the basis of consideration of the totality of the circumstances. *Patterson* v. *State*, 306 Ark. 385, 815 S.W.2d 377 (1991); *Weaver* v. *State*, 305 Ark. 180, 806 S.W.2d 615 (1991). The Trial Court resolves conflicts in the testimony, and we do not reverse unless the finding is clearly erroneous. *Fuller* v. *State*, 278 Ark. 450, 646 S.W.2d 700 (1983).

■ We have been given no reason to hold the decision to admit the statement over Mr. Higgins' objection was clearly erroneous. A reasonable explanation was given for the lengthy duration of the interview resulting in the confession, and we cannot gainsay the Trial Court's apparent conclusion that there was no coercion beyond the assumption attendant upon any statement made while an accused is in custody. *See Miranda* v. *Arizona*, 384 U.S. 436, (1966).

### b. Request for attorney

■ Mr. Higgins does not contend that he asked to be provided with an attorney. His version of what was said does not differ materially from that of Deputy Hopper. The issue becomes whether the reference to an attorney in his question "Do you think I need an attorney?" was sufficient to require that the interview cease in accordance with the requirement of *Edwards* v. *Arizona*, 451 U.S. 477 (1981), and our case of *Findley* v. *State*, 300 Ark. 265, 778 S.W.2d 624 (1989), which applies the rule of the *Edwards* case.

We have not previously dealt with a situation quite like this one, but we have discussed "equivocal" references by accused persons to the need for counsel at the interrogation stage. In *Day* v. *State*, 306 Ark. 520, 816 S.W.2d 852 (1991), Mr. Day had completed a statement and then said to one officer, "Well, before I sign anything, I probably better talk to a lawyer." Another officer, knowing of the request for counsel, then read the *Miranda* warnings and had Mr. Day execute a second statement of rights form, after which he told Mr. Day he knew of his request for counsel and asked whether he wanted to be put in touch with an attorney at that point. Mr. Day then said he had not meant he wanted counsel except for the trial. We concluded the "request"

had been equivocal and that, in any event, the questioning by the second officer was not improper because it had been of the narrow sort designed only to clarify the accused's desire for counsel.

In *Hendrickson* v. *State*, 285 Ark. 462, 688 S.W.2d 295 (1985), we reversed a conviction because questioning had continued after an accused had asked for her lawyer by name. In the opinion we noted the three approaches the courts have taken to an equivocal statement which might or might not be construed to amount to a request for counsel during custodial interrogation. First is the "narrow questions permitted" approach we used in the *Day* case. Second is the approach which requires all questions to cease regardless of the ambiguity or equivocation in the reference by the accused to a need for counsel. The third approach establishes a threshold beyond which a reference must go before it becomes a "request" necessitating the cessation of questioning in accordance with *Edwards* v. *Arizona, supra.*

Other states have confronted the problem. The holdings in some cases involving similar circumstances have been largely to the effect that the obligation to cease the interview does not arise unless there has been a clear invocation of the right to counsel. *See, e.g., State* v. *Moorman*, 744 P.2d 679 (Ariz. 1979); *Commonwealth* v. *Pennellatore*, 467 N.E.2d 820 (Mass. 1984); *State* v. *Campbell*, 367 N.W.2d 454 (Minn. 1985).

We have not found a situation just like this one in any other case. In the cases cited above, the authorities questioning the accused have, when confronted with an equivocal reference to counsel, either stopped the interrogation or they or the accused have in some manner clarified the situation. In this case, we have only Deputy Hopper's response to the reference which did not attempt to clarify whether Mr. Higgins wanted an attorney for the interrogation.

All of the cited cases are about the Fifth Amendment right to counsel as explained in *Miranda* v. *Arizona, supra.* The United States Supreme Court has recently made it very clear that the Fifth Amendment and the elaboration of it in the *Edwards* case do not require an interrogation to cease when the reference to the need for an attorney by an accused is ambiguous. The Supreme

Court has clearly adopted the "threshold" approach we described in *Hendrickson* v. *State, supra.*

■ In *Davis* v. *United States*, No. 92-1949, decided June 24, 1994, the facts were that a sailor who had been read his rights by naval personnel investigating a murder said "Maybe I should talk to a lawyer." When asked if he were requesting a lawyer, he said he was not, and the interview continued, resulting in an inculpatory statement. The latter fact makes the *Davis* case like those cited above where law enforcement officers did not let the ambiguous reference just drop, but sought to clarify it. That is, of course, different from the facts now before us, but the language of the opinion about the requirement found in the *Edwards* case is revealing and helpful.

> Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. *McNeil* v. *Wisconsin* [501 U.S.171 (1991)]. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require cessation of questioning.
>
> * * *
>
> The *Edwards* rule . . . provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he hasn't said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.

Thus we now have it on clear authority that an ambiguous reference to an attorney by a suspect after hearing his *Miranda*

rights read does not require that the interrogation cease. Mr. Higgins' reference to an attorney in this case was surely ambiguous and hardly amounted to the sort of direct request required to invoke his Fifth Amendment right to counsel. While we cannot say for certain how the Supreme Court would have decided the case now before us, the language of the opinion in the *Davis* case leads us to suspect it would affirm on this point, thus we do so.

### 3. The magistrate

As noted above, Mr. Higgins was arrested for rape while he was incarcerated on a DWI II charge. Despite the fact that he had already been arrested on the basis of the statements of his children, he was taken before a municipal court magistrate who, purporting to act for the Circuit Court, issued a document entitled "Bench Warrant for Arrest."

Mr. Higgins argues that the magistrate was not properly appointed to his position and thus the allegations against him should have been dismissed. Even if the arrest had been based on the warrant in question, and even if the arrest had been illegal, that would not have constituted a basis for dismissal. *United States* v. *Crews*, 445 U.S. 463 (1980); *Wallace* v. *State*, 314 Ark. 247, 862 S.W.2d 235 (1993).

Affirmed.