James E. BAKER, Jr. *v.* STATE of Arkansas

CR 04-542                                             214 S.W.3d 239

Supreme Court of Arkansas
Opinion delivered September 29, 2005

*Doug Norwood* and *Susan Lusby*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

Betty C. Dickey, Justice. James E. Baker, Jr., appeals his rape conviction, arguing that the trial court erred in denying the motion to suppress his confession. He asserts that his confession was involuntary because: (1) law enforcement officers failed to comply with Ark. R. Crim. P. 2.3; (2) his status as a voluntary witness changed to an in-custody suspect prior to his confession; (3) his confession was obtained after he invoked his *Miranda* right to counsel; and, (4) he did not waive his right to counsel, even though he continued to speak with law enforcement officers. Jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(3) & (6). We find no error and affirm.

On April 24, 2002, Investigator J.R. Davenport called and spoke with either Mr. or Mrs. Baker and requested that Mr. Baker come to the Carroll County Sheriff's Office for an interview, and to give a statement regarding an allegation of child maltreatment of his granddaughter, A.V. When Baker arrived, Investigator Alan Hoos read him his *Miranda* rights. Baker executed a written waiver and was subjected to three interviews, lasting just over an hour.

During his initial interview Baker was told that A.V. had accused him of touching her in a sexual manner, and a short discussion ensued, leading to numerous ambiguous responses by Baker. When his answers raised more questions, Investigator Hoos asked Baker if he would be willing to take a polygraph examination. Baker agreed and, after discussing scheduling times for the polygraph, Baker was taken to another interview room and asked to wait there for a few moments.

Approximately twelve minutes later Investigator Hoos returned, informed Baker that he had just spoken to his wife, and told him that some of his statements were inconsistent with hers. While Investigator Hoos was questioning Baker about his previous ambiguous and inconsistent statements, Baker stated that he felt like he should not answer any more questions without having an attorney present. When asked to clarify his statement, Baker replied that he thought that he would need one. Baker continued

answering questions by Investigator Hoos without making any further attorney references. And, during a third interview conducted by Investigator Davenport, Baker admitted to having sexual relations with A.V., which ultimately led to his arrest and conviction.

Baker initially contends that his confession was involuntary because his rights were violated under Arkansas Rule of Criminal Procedure 2.3, which provides: "If a law enforcement officer acting pursuant to this rule requests any person to come to or remain at a police station, . . . he shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request." This court reviews a trial court's ruling on a motion to suppress and the voluntariness of a confession by making an independent determination based upon the totality of the circumstances, reversing only if it is clearly against the preponderance of the evidence. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

This court has observed that Rule 2.3 does not require an explicit statement that one is not obligated to appear at the police station; rather, "the police only need to take such steps as are 'reasonable to make clear that there is no legal obligation to comply' with the request to come to the police station." *Shields v. State*, 348 Ark. 7, 14, 70 S.W.3d 392, 395 (2002); *State v. Bell*, 329 Ark. 422, 948 S.W.2d 557 (1997). In *Bell* this court declined to adhere to its previous interpretation of Rule 2.3, requiring "a verbal warning of freedom to leave as a bright-line rule for determining whether a seizure of the person has occurred under the Fourth Amendment and whether a statement to police officers must be suppressed." *Bell*, 348 Ark. at 431, 948 S.W.2d at 562. Instead, we ruled that "we will view verbal admonition of freedom to leave as *one factor to be considered in our analysis* of the total circumstances surrounding compliance with Rule 2.3." *Id.* (Emphasis added.) We further stated that when interpreting Rule 2.3 in the future, we will follow *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). *Id.*

In assessing whether one's consent to accompany law enforcement officers is voluntary or is the product of coercion, the Court in *Mendenhall* wrote as follows:

> We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is

there any foundation whatever for invoking constitutional safe-guards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martinez-Fuerte*, 428 U.S. 543, 554, 96 S. Ct. 3074, 3081, 49 L. Ed. 2d 1116. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

. . . .

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (Citations omitted.) In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Mendenhall*, 446 U.S. at 553-555, 100 S. Ct. at 877.

■ Testimony during the suppression hearing showed that Investigator Davenport called the Baker home and requested that Mr. Baker come to the sheriff's office to assist in their investigation for allegations of maltreatment involving his granddaughter. Additionally, the taped interviews reveal that Investigator Hoos advised Baker before the interview that he was only there to answer questions regarding the investigation. There is evidence that law enforcement officers complied with Rule 2.3 by making it reasonably clear to Baker that he was only wanted for questioning. Therefore, because the trial court's ruling was not clearly against the preponderance of the evidence, it did not err in denying Baker's motion to suppress.

Baker next argues that, between his arrival at the sheriff's office and the end of his first interview, Investigator Hoos informed Baker that A.V. had accused him of inappropriate sexual

contact with her, and that accusation changed Baker's status from a voluntary witness to that of suspect. He relies on *Upton v. State,* 343 Ark. 543, 36 S.W.3d 740 (2001), and submits that this change in status caused him to be an "in-custody suspect," because a reasonable person in his situation would not have believed that he was free to leave. On this point, even if we were to assume that a reasonable person in his shoes would have deemed his or her liberty to have been curtailed, we conclude for the reasons stated below that Baker failed to unequivocally invoked his *Miranda* right to counsel.

Baker says his confession was involuntary and should have been suppressed, arguing that: once he invoked his *Miranda* right to counsel, any statements made thereafter were inadmissible; and, he did not waive this right simply by continuing to communicate with law enforcement officers. A review of the taped interview contains the following colloquy between Baker and Investigator Hoos:

> INVESTIGATOR: Okay. So I'm — I'm trying to figure out what's going on.
>
> APPELLANT: I don't know. I don't know what's going on. Maybe I need to see a psychiatrist.
>
> INVESTIGATOR: Why would you need to see a psychiatrist?
>
> APPELLANT: Because I feel like I'm only being — I feel like I did something wrong and I don't know what I did wrong.
>
> INVESTIGATOR: Okay. Is there something that you —
>
> APPELLANT: I don't feel like I can talk with you without an attorney sitting right here to give — have them here to give me some legal advice.
>
> INVESTIGATOR: Okay. So you're telling me you want an attorney?
>
> APPELLANT: I think I'm going to need one. I mean, it looks like that.

The United States Supreme Court has made it very clear that when invoking the *Miranda* right to counsel, the accused must be unambiguous and unequivocal. *Edwards v. Arizona,* 451 U.S. 477,

101 S. Ct. 1880 (1981); *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350 (1994). *See also Whitaker v. State*, 348 Ark. 90, 71 S.W.3d 567 (2002), and *Higgins v. State*, 317 Ark. 555, 879 S.W.2d 424 (1994). When invoking the right to counsel, the Court has said:

> If a suspect makes a reference to an attorney that is ambiguous or equivocal such that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require cessation of questioning.

*Higgins*, 317 Ark. at 562, 879 S.W.2d at 427 (quoting *Davis*, 512 U.S. 461, 114 S. Ct. at 2356). In recognizing the balance between the necessity for law enforcement officers to gather information to assist in an investigation and the accused's constitutional right to counsel, the Court said:

> [I]f we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, . . . police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he hasn't said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.

*Id.*

This case is similar to the facts in *Higgins*. There, after the appellant was given his *Miranda* warnings and executed a waiver, he asked before questioning began, "Do you think I need a lawyer?" to which the police officer replied, "You will have to have one." The appellant continued with the interrogation and eventually made incriminating statements that were used against him at trial. Relying on the Court's guidelines from *Edwards* and *Davis*, *supra*, we determined that the appellant's reference to an attorney "was surely ambiguous and hardly amounted to the sort of direct request required to invoke his Fifth Amendment right to counsel." *Higgins*, 317 Ark. at 563, 879 S.W.2d at 428.

Like the appellant in *Higgins*, Baker's reference to an attorney was ambiguous. After Baker was Mirandized and executed a waiver, he told Investigator Hoos that "I don't feel that I can talk to you without an attorney sitting right here to give — have them

give me some legal advice," Mr. Hoos followed up by asking Baker whether he wanted an attorney. Baker answered and said, "I think I'm going to need one. I mean, it looks like that." This response is prospective, indicating Baker thought he might need an attorney at some time in the foreseeable future. Baker, then continued with the interview, which eventually led to his confession.

■ We conclude that because Baker was Mirandized before the interviews, and his reference to an attorney was equivocal and ambiguous, law enforcement officers did not violate Baker's right to counsel by continuing to question him. Accordingly, Baker's confession was voluntary, and we cannot say that the circuit court abused its discretion in denying his motion to suppress. Because we affirm on this basis, we need not consider whether he waived his right to counsel.

Affirmed.