2010 Ark. App. 599

**Wendell Lee STRICKLAND, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1286.**

Court of Appeals of Arkansas.

Sept. 15, 2010.

Rehearing Denied Oct. 27, 2010.

---

**12.** *Mayes v. State*, 351 Ark. 26, 89 S.W.3d 926 (2002).

**13.** *See id.*

**14.** *Carter v. Norris*, 367 Ark. 360, 240 S.W.3d 124 (2006).

158

Matthew Dean Black, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Little Rock, for appellee.

RAYMOND R. ABRAMSON, Judge.

A Benton County jury convicted Wendell Lee Strickland of rape and sentenced him to eighteen years in the Arkansas Department of Correction. He appeals his conviction claiming that the trial court lacked jurisdiction; that the trial court erred in admitting expert testimony explicating the lack of physical evidence of rape; and that the trial court erred in admitting other bad-act testimony under Ark. R. Evid. 404(b). We affirm on all points.

### Facts

In October of 2007, ten-year-old C.V. reported to her mother that she had been sexually abused over a number of years by her babysitter's husband, Wendell Lee Strickland. As a result of these allegations, Strickland was charged with rape.

At trial, C.V. claimed that Strickland placed his hand down her pants and digitally penetrated her on at least three separate occasions. She testified that the first instance occurred in a bedroom in Strick-

land's home located near the Siloam Springs, Arkansas, police station. The other two times (as well as an occasion where Strickland forced her hand down his pants) occurred while she was visiting Strickland's home in Oklahoma. Although she only gave specifics as to these four events, C.V. testified that there were other instances of abuse. She stated that she could not remember when the abuse started but believed that it began when she was in second grade.

C.V.'s father testified that Strickland's wife, Priscilla, began babysitting C.V. and her younger sister, B.V., in the Strickland home in approximately the spring of 2003 after the church daycare they were using closed. Priscilla had been a teacher at the church daycare prior to its closing and had helped C.V. cope with her separation anxiety. When they discovered that Priscilla was starting her own childcare business, C.V.'s parents inquired whether space was available for C.V. and B.V. He testified that, thereafter, Priscilla began providing childcare for C.V. and B.V. at her home in Siloam Springs near the police station. He stated that the children attended daycare at that location for a couple of months before the location was moved to another part of town and eventually to Oklahoma.

Debra Sensor, a registered nurse and a certified sexual-assault nurse examiner, testified that she performed a medical assessment on C.V. approximately one week after C.V. reported the abuse to her parents. Nurse Sensor testified she did not observe any physical findings of sexual abuse or assault upon her examination. She further testified, over a defense objection, that such a finding was not surprising given the length of time between the alleged assault and the examination and given that the vaginal area tends to heal fairly quickly.

H.B., C.V.'s fourteen-year-old cousin, testified that she came into contact with Strickland on several occasions while visiting C.V. and that Strickland made her uncomfortable because he was very "touchy and feely." She stated that he kissed her forehead and cheek and that he had, at times, also rubbed her back and thigh in such a way as to make her uncomfortable. She further testified to an occasion when she rode with him on his ice cream truck where he had her sit on his lap while he was driving and he rubbed her back and leg.

In his defense, Strickland presented several witnesses who provided testimony contradicting C.V.'s claims. His witnesses testified that C.V. never stayed at the Strickland home near the police station in Siloam Springs, that her descriptions of the layout of that house were incorrect, and that her claim that Strickland was left alone with the children being cared for by his wife were false. The witnesses also gave testimony attempting to discredit H.B.'s testimony.

### Jurisdiction

Strickland first argues that the State failed in its burden of proving the trial court had jurisdiction over the crime alleged. He asserts that a fact-finder could not find beyond a reasonable doubt that a crime had occurred in Arkansas given (1) C.V.'s inability to provide a detailed description regarding the time and location of the rape and (2) the evidence he presented negating her testimony that the rape occurred at the house near the police station in Siloam Springs. Accordingly, he contends the trial court should have granted his motion for a directed verdict on jurisdictional grounds.

The Arkansas Criminal Code instructs that jurisdiction is one of four elements that must be proven beyond a rea-

sonable doubt to convict someone of an offense. *See* Ark.Code Ann. § 5–1–111(a) (Repl.2006). However, Ark.Code Ann. § 5–1–111(b) creates a presumption in favor of jurisdiction. *Ridling v. State,* 360 Ark. 424, 203 S.W.3d 63 (2005). Section 5–1–111(b) states as follows:

> (b) The state is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction or venue.

Thus, before the State is required to put on evidence to prove jurisdiction, there must be some positive evidence that the offense occurred outside the jurisdiction of the court. *Findley v. State,* 307 Ark. 53, 818 S.W.2d 242 (1991).

■ Here, Strickland fails to present any "positive evidence" that the rape for which he was convicted actually occurred outside the jurisdiction of the state. Rather, he relies upon C.V.'s inability to provide details regarding the timing and location of the rape, as well as the evidence presented that contradicted her testimony as to the location of the rapes. The fact that the victim may be unclear about the exact location in which the rape allegedly occurred is not the same as positive evidence that the rape occurred outside the jurisdiction of the court. *See Higgins v. State,* 317 Ark. 555, 879 S.W.2d 424 (1994) (holding that victim's inability to recall where crime occurred was not sufficient to overcome the presumption that venue was proper and the court had jurisdiction of the offense). Lack of proof is not the equivalent of an "affirmative showing." *See Lee v. State,* 27 Ark.App. 198, 770 S.W.2d 148 (1989) (lack of proof that proper venue is in the county of prosecution is not the equivalent of an "affirmative showing").

■ Moreover, even if we determine that Strickland's evidence did rise to the level of an affirmative showing of lack of jurisdiction, his argument fails. When reviewing the evidence on a jurisdictional question, we need only determine whether there was substantial evidence to support the finding of jurisdiction. *Gardner v. State,* 263 Ark. 739, 569 S.W.2d 74 (1978). Here, C.V. testified that the rape took place in Siloam Springs, Arkansas. This, by itself, constitutes substantial evidence that the trial court had jurisdiction. *See Higgins v. State,* 317 Ark. at 558–59, 879 S.W.2d at 426 (victim's testimony regarding the location of sexual abuse sufficient) and *Lindsey v. State,* 54 Ark.App. 266, 925 S.W.2d 441 (1996) (victim's testimony regarding the location of the sexual abuse was sufficient). Any inconsistencies in C.V.'s testimony were for the jury to resolve. *Mingboupha v. State,* 2009 Ark. App. 709, at 1, 2009 WL 3460711 (matters such as evaluating a witness's credibility and resolving inconsistencies in the evidence are issues for the jury and not the court). Accordingly, the trial court did not err in denying Strickland's directed-verdict motion on the basis of jurisdiction.

### Admissibility of Expert Testimony

■ Strickland next argues that the trial court erred in allowing Nurse Debra Sensor to testify that a lack of physical findings was not inconsistent with abuse. The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse the trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Rollins v. State,* 362 Ark. 279, 208 S.W.3d 215 (2005).

■ The general test for admissibility of expert testimony is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact in

issue. Ark. R. Evid. 702 (2010);[1] *Utley v. State*, 308 Ark. 622, 826 S.W.2d 268 (1992); *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995). An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier of fact to understand and draw its own conclusions. *Utley*, 308 Ark. at 625, 826 S.W.2d at 270.

Strickland argues that the jurors were fully competent to determine whether the lack of physical evidence was determinative of guilt and that Nurse Sensor's testimony unnecessarily attached credibility to C.V.'s claim of abuse despite the lack of any physical proof.[2] We disagree.

First, the substance of Nurse Sensor's testimony was outside the common knowledge of a lay juror. A lay person might otherwise think that, because C.V. alleged that the abuse occurred over a period of several years, there would be some physical manifestation found upon examination. Nurse Sensor's carefully worded testimony merely addressed that potential misconception. She testified that

> There had been some time between the, um, alleged assault and the exam, uh, so had there been an injury, it probably would have been healed up. We heal very, very quickly in that area.

Nor was her testimony an impermissible opinion regarding C.V.'s credibility. Nurse Sensor's explanation never implied that an assault had in fact occurred or that any injury had ever been sustained. Rather, her testimony merely served to explain to the jury why the absence of physical evidence did not necessarily mean that C.V. had not suffered sexual abuse.[3] Thus, the admission of her testimony did not rise to the level of an abuse of discretion.

### *Rule 404(b)*

■ Finally, Strickland argues that the trial court erred in admitting the 404(b) testimony of C.V.'s cousin, H.B. In short, H.B. testified that, while visiting C.V., she came into contact with Strickland on several occasions and that he had touched her in a way that made her uncomfortable. Strickland asserts that this testimony was extremely prejudicial, had no probative value as to whether he raped C.V., and merely served to inflame the jury. We need not reach this issue because Strickland failed to make a contemporaneous objection at trial and, in fact, in an agreed order entered shortly before trial, stipulated to its admissibility for purposes of Rule 404(b).

■ Our law is well settled that this court will not consider issues raised for the first time on appeal, even constitutional ones, because the trial court never had the opportunity to rule on them. *Thomas v. State*, 370 Ark. 70, 74, 257 S.W.3d 92, 96

---

1. Rule 702 of the Arkansas Rules of Evidence states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

2. Strickland also argues that Sensor's testimony was unnecessary because, even assuming the truth of her testimony that a rape occurred, the testimony could not help the jury decide whether the rape occurred in Ar-

kansas. As we have already ruled that jurisdiction was proper, we do not address this argument.

3. As the State points out, this type of testimony has previously been admitted in child-abuse cases to assist the jury. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008); *Stidam v. State*, 2010 Ark. App. 278, 374 S.W.3d 246; *Price v. State*, 2010 Ark. App. 111, 377 S.W.3d 324. The admissibility of those statements, however, was not the subject of their respective appeals and is not dispositive of the issue before us.

(2007). A contemporaneous objection is required to preserve an issue for appeal unless the failure to object falls within one of the four recognized exceptions to the contemporaneous-objection rule, known as the *Wicks* exceptions.[4] *Id.* at 74, 257 S.W.3d at 97 (citing *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980)). The *Wicks* exceptions are narrow and are to be rarely applied. *See Anderson v. State,* 353 Ark. 384, 395–98, 108 S.W.3d 592, 599–600 (2003). We find that Strickland's argument does not fall within any of the narrowly defined *Wicks* exceptions.

Moreover, Strickland is bound by his pretrial stipulation to the admissibility of H.B.'s testimony and cannot now claim error on appeal on that basis. *See Rye v. State,* 2009 Ark. App. 839, 373 S.W.3d 354 (holding Rye was bound by her stipulation at trial that a child-victim was incompetent to testify). Thus, the admission of H.B.'s testimony was not in error.

Affirmed.

GLADWIN and GLOVER, JJ., agree.

---

**4.** The exceptions recognized in *Wicks* are as follows: (1) when the trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) when defense counsel has no knowledge of the error and thus no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character that the trial court should intervene on its own motion to correct the error; and (4) when the admission or exclusion of evidence affects a defendant's substantial rights. *Wicks,* 270 Ark. at 785–87, 606 S.W.2d at 369–70.