2013 Ark.App. 247

**Christopher Dewayne DODGE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CACR 12–615.**

Court of Appeals of Arkansas.

April 17, 2013.

---

**24.** *Maguire v. Jines*, 2011 Ark. App. 359, at 5, 384 S.W.3d 71, 74 (*citing Johnson v. Cincinnati Ins. Co.*, 375 Ark. 164, 289 S.W.3d 407 (2008)).

The Law Office of Darren A. Gibbs, Fayetteville, by: Darren A. Gibbs, for appellant.

Dustin McDaniel, Att'y Gen., by: Jake H. Jones, Ass't Att'y Gen., for appellee.

STEPHEN TABOR, Judge.

Christopher Dodge was tried by a jury and found guilty of three counts of rape and one count of attempted rape of a minor. As his sole point of appeal, he contends that the trial court erred in denying his motion to suppress the statement that he made to law-enforcement officers because it was obtained in violation of his right to counsel. We affirm.

*Background*

Two suppression motions were filed by Dodge, and hearings were held on both. The first motion asserted that his statement should be suppressed because there was not an intelligent waiver of his rights and his statement was not voluntary. The second motion asserted that his right to an attorney was violated in obtaining the statement. Both motions were denied. Dodge has abstracted testimony from both hearings in order to give his argument context on appeal, but he pursues only the denial of his second motion to suppress, contending that the trial court erred in denying his motion because his right to an attorney was violated in giving his statement.

Tara Flute, an employee of the Crimes Against Children Division of the Arkansas State Police, explained that she contacted Dodge by telephone on May 25, 2011. She asked if he would agree to do an interview as part of a child-maltreatment investigation involving his niece and told him that it would have to be conducted at the sheriff's office. She stated that the interview took place on May 30, 2011, in one of the interview rooms at the sheriff's office and that she was present for a portion of the interview, which was conducted by Sergeant Hobe Runion of the Sebastian County Sheriff's Department. She recalled that Dodge arrived with his brother-in-law, the child's father, and that his *Miranda* rights were read to him at the outset.

Sergeant Runion testified that the interview with Dodge lasted about two-and-a-half hours. He explained that he Mirandized Dodge before starting the interview and that Dodge seemed to be of above-average intelligence, literate, confident, and somewhat knowledgeable about the process. Sergeant Runion testified that Dodge executed a waiver-of-rights form; he stated that at no time did it appear to him that Dodge did not understand his rights. Sergeant Runion explained that Dodge was not under arrest; that Dodge was not placed in cuffs or restraints; and that Dodge would have been free to leave the sheriff's office.

For purposes of this appeal, the critical portion of the conversation between Dodge and Sergeant Runion occurred long after the interview had begun and preceded Dodge's request to go to the bathroom, which will be discussed *infra*:

RUNION: I'd rather you just tell me what happened, Chris. . . . You know, we've been playing games for, we've been playing games for almost two hours, haven't we?

DODGE: No, we really haven't. But you think we have.

RUNION: I do. What would you feel like in my position? You know, I've laid everything out. I haven't kept anything from you.

DODGE: Like I said, I don't do what you do, okay? I find. . . .

RUNION: Yeah, but you're a smart guy. You know what I know. I told you everything I know.

DODGE: *Hey, can I get a call in for a lawyer?*

RUNION: Hmm?

DODGE: *Okay? I really need to call for a lawyer. I mean, I didn't even have to come down here and talk . . .*

RUNION: You're right.

DODGE: . . . with you today.

RUNION: . . .

DODGE: Okay?

RUNION: You're right, you didn't. You're right. And I appreciate that. I think that that's the . . .

DODGE: Uh, that's the first step on the road to admittance of something.

RUNION: No, no. It's, it's the, uh, it's the right thing to do. It's the right thing to do. And I told you right when you came in, first thing I do is I introduce myself and I said, I appreciate you coming in.

AM: Want water?

DODGE: Not particularly, but I'll take it since I've had nothing to eat today.

RUNION: Wasn't that the first thing I said to you when you came in?

DODGE: Yeah.

RUNION: I appreciate you coming in, didn't I? Very first thing. I said, "I'm Hobie Runion. I appreciate you comin' in today." That doesn't end there. I'd much rather. I would much rather you just tell me what happened, Chris. And have to not even have to go through this test and go through this again. I'd rather you just tell me what happened.

(Emphasis added.)

Sergeant Runion explained that he regarded Dodge's comments as "almost a rhetorical question," that the comments were ambiguous, and that Dodge continued talking after making the comments. He said that he thought if Dodge was finished talking to him that Dodge would clarify and tell him that he wanted an attorney and that he was "done talking." Sergeant Runion stated that he was prepared to stop if Dodge had done that, but Dodge never did.

Sergeant Runion explained that Dodge subsequently asked to go to the bathroom, approximately two hours after the interview had begun, and that he was allowed to do so unescorted and unattended. According to him, the bathroom was approximately twenty to twenty-five feet away from the interview room. Sergeant Runion explained that when he thought Dodge was probably almost done, he left the interview room, went out into the hall, and saw Dodge coming out of the bathroom, holding his neck, and then falling to the floor. He initially thought Dodge had had a stroke or heart attack and yelled for someone to call 911; but when he got closer to Dodge, Sergeant Runion said that he could see a small puncture wound on Dodge's neck that did not appear to be serious. He then had one of the jail nurses and an EMT assess Dodge's neck. Sergeant Runion explained that Dodge had "poked himself in the neck" using his security badge (Dodge, who worked as a private security officer, came to the interview in his uniform); that there was a superficial puncture wound on each side of his neck, with only a "speck" of blood on one side and "no bleeding or tearing or anything like that." He said the entire incident lasted under five minutes.

Sergeant Runion testified that after Dodge returned to the room, Dodge announced, "It's all true," and then explained that he had engaged in anal sex with his niece at several locations in Fort Smith, Hackett, and Greenwood, and on White Oak Mountain Road.

At the conclusion of the hearing on the second motion to suppress, the trial court

took the matter under advisement. Then, by order entered on February 9, 2012, the trial court denied the motion, finding that Dodge was not in custody, that his comments regarding an attorney were rhetorical and indicated that he was merely considering asking |₆for one, that Dodge never made a request for an attorney to be present before continuing with the interview, and that not only did Dodge not stop the conversation, he also carried the conversational ball forward. The trial court concluded that Dodge did not make an unequivocal and unambiguous request for an attorney.

*Standard of Review*

■ In reviewing a trial court's ruling on a motion to suppress, this court makes an independent determination based upon the totality of the circumstances but will reverse the decision only if it is clearly against the preponderance of the evidence. *Dees v. State,* 30 Ark.App. 124, 783 S.W.2d 372 (1990).

*Discussion*

■ In challenging the trial court's denial of his motion to suppress, Dodge contends that he clearly and unequivocally invoked his right to counsel, that he did not initiate contact with the officers following that invocation, that he did not thereafter make a knowing and intelligent waiver of his right to counsel, and that, consequently, the trial court clearly erred in refusing to suppress his statement. He does not challenge, however, the trial court's finding that he was not in custody at the time he made the statement, a finding that serves as an independent, alternative basis for denying his motion to suppress. We will not reverse a trial court's decision when the appellant fails to attack the trial court's independent, alternative basis for its ruling. *Prigett v. State,*

2012 Ark. App. 504, 2012 WL 4207324. It is therefore unnecessary to address Dodge's argument that the trial court erred in denying |₇his motion to suppress based upon the trial court's finding that his request for an attorney was not unequivocal and unambiguous. Moreover, even if we were to address the merits of his argument, we would find no basis for reversal.

In *Baker v. State,* 363 Ark. 339, 343–45, 214 S.W.3d 239, 242–43 (2005), our supreme court explained:

The United States Supreme Court has made it very clear that when invoking the *Miranda* right to counsel, the accused must be unambiguous and unequivocal. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). *See also Whitaker v. State,* 348 Ark. 90, 71 S.W.3d 567 (2002), and *Higgins v. State,* 317 Ark. 555, 879 S.W.2d 424 (1994). When invoking the right to counsel, the Court has said:

If a suspect makes a reference to an attorney that is ambiguous or equivocal such that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require cessation of questioning.

*Higgins,* 317 Ark. at 562, 879 S.W.2d at 427 (quoting *Davis,* 512 U.S. at 461, 114 S.Ct. at 2356). In recognizing the balance between the necessity for law enforcement officers to gather information to assist in an investigation and the accused's constitutional right to counsel, the Court said:

[I]f we were to require questioning to cease if a suspect makes a statement that might be a request for an attorney, ... police officers would be

forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he hasn't said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.

*Id.*

This case is similar to the facts in *Higgins*. There, after the appellant was given his *Miranda* warnings and executed a waiver, he asked before questioning began, "Do you think I need a lawyer?" to which the police officer replied, "You will have to have one." The appellant continued with the interrogation and eventually made incriminating statements that were used against him at trial. Relying on the Court's guidelines from *Edwards* and *Davis, supra,* we determined that the appellant's reference to an attorney "was surely ambiguous and hardly amounted to the sort of direct request required to invoke his Fifth Amendment right to counsel." *Higgins,* 317 Ark. at 563, 879 S.W.2d at 428.

Like the appellant in *Higgins,* Baker's reference to an attorney was ambiguous. After Baker was Mirandized and executed a waiver, he told Investigator Hoos that "I don't feel that I can talk to you without an attorney sitting right here to give—have them give me some legal advice," Mr. Hoos followed up by asking Baker whether he wanted an attorney. Baker answered and said, "I think I'm going to need one. I mean, it looks like that." This response is prospective, indicating Baker thought he might need an attorney at some time in the foreseeable future. Baker, then continued with the interview, which eventually led to his confession.

We conclude that because Baker was Mirandized before the interviews, and his reference to an attorney was equivocal and ambiguous, law enforcement officers did not violate Baker's right to counsel by continuing to question him.

Here, Dodge arrived at the sheriff's office, accompanied by his brother-in-law, to participate in the maltreatment investigation concerning his niece. He was given *Miranda* warnings, but was not placed under arrest. Likewise, he was not handcuffed or otherwise physically restrained. The interview took place in an interview room and lasted approximately two-and-a-half hours. Dodge was described as well spoken, confident, and knowledgeable. Shortly after the critical exchange about an attorney (quoted in full above), Dodge asked if he could go to the restroom, and he was allowed to go unescorted. After the restroom incident (described previously), Dodge returned to the interview room and continued to engage in dialogue with Sergeant Runion, eventually admitting that he had engaged in anal sexual contact with his niece.

Sergeant Runion described Dodge's reference to an attorney as rhetorical and ambiguous because Dodge never said that he no longer wanted to talk or that he was "done" until he got a lawyer; in fact, he continued to talk.

Cases such as this hinge on their own particular facts. After reviewing the totality of the circumstances in this case, we find no clear error in the trial court's denial of the motion to suppress, and therefore we affirm.

Affirmed.

PITTMAN, J., agrees.

WOOD, J., concurs.

RHONDA K. WOOD, Judge, concurring.

I concur with the decision to affirm the circuit court's ruling not to suppress the appellant's statement because he was not in custody at the time he confessed to the rape. Although my colleagues agree that he was not in custody, they go further to discuss the appellant's argument that his confession should be excluded because he invoked his Fifth Amendment right to counsel. An individual cannot invoke the Fifth Amendment right to counsel when he is not in custody. *United States v. Ellison,* 632 F.3d 727 (1st Cir.2010) (Souter, J.). Once our court found that the appellant was not in custody, the Miranda analysis ends and the examination of further facts is superfluous.

I believe it to be merely advisory to discuss whether the appellant's statements and actions would have been an invocation of his right to counsel had he actually been in custody. Our court does not issue advisory opinions. *See City of Clinton v. Southern Paramedic Services, Inc.,* 2012 Ark. 88, 387 S.W.3d 137; *Chambers v. State,* 2012 Ark. 407, 424 S.W.3d 296 (Danielson, J., concurring).

For this reason I concur solely in the disposition of the case as to the circuit court's determination that the appellant was not in custody and therefore could not invoke his right to counsel.